JOURNAL ENTRY AND OPINION
{¶ 1} S.O. (appellant) appeals the court's granting custody of seven of her children to S.W. (the father), the biological father of six of the children and the stepfather of the seventh child. After reviewing the facts of the case and pertinent law, we affirm.
 I {¶ 2} On June 11, 2003, the Cuyahoga County Department of Children and Family Services (CCDCFS) filed a complaint alleging neglect and dependency against appellant in relation to seven of her children. The children were removed from her home and placed in the temporary custody of CCDCFS. On October 21, 2003, the children were adjudicated dependent, pursuant to R.C. 2151.04(B) and (C), and remained in CCDCFS' temporary custody.
 {¶ 3} CCDCFS filed case plans for possible reunification with appellant or the father. Appellant's case plan included the following: attend and complete parenting and domestic violence classes; obtain a psychological evaluation; comply with medical health treatment for herself; and obtain appropriate housing for herself and the children. The father's case plan included attending and completing parenting and domestic violence classes, and obtaining appropriate housing for himself and the children.
 {¶ 4} On October 28, 2004, appellant filed a motion for custody; on December 15, 2004, the father filed a motion for custody; and on May 25, 2005, CCDCFS filed a motion to modify temporary custody to legal custody to the father.
 {¶ 5} After assessing each parent's compliance with their case plan at three dispositional hearings, the court found that appellant was "still in need of on-going services in regard to her parenting abilities," and was concerned whether appellant could provide appropriate housing for the children. The court also found that the father completed his case plan, was presently employed, and was able to provide appropriate housing for himself and the children.
 {¶ 6} On October 27, 2005, the court approved and adopted the magistrate's decision awarding legal custody of all seven children to the father. It is from this order that appellant appeals.
 II {¶ 7} Appellant assigns three errors for our review, all of which are interrelated and will be discussed together. They are as follows:
 {¶ 8} "I. The trial court decision to grant legal custody of the children to the father was not based on a preponderance of the evidence and therefore constitutes an abuse of discretion.
 {¶ 9} "II. The dispositional order of the trial court granting legal custody of appellant's children to the father [S.W.] was based upon insufficient evidence as to the best interests of each individual child.
 {¶ 10} "III. The trial court's decision to grant legal custody of all of the children to the father [S.W.] was against the manifest weight of the evidence."
 {¶ 11} After a child has been adjudicated abused, neglected or dependent, the court may award legal custody of the child to either parent, or another person properly requesting legal custody, upon a showing by a preponderance of the evidence that legal custody is in the child's best interest. R.C. 2151.353(A)(3); In re A.W.-G., Butler App. No. CA2003-04-099, 2004-Ohio-2298. The Ohio Supreme Court has held that "the natural father has equality of standing with the mother with respect to the custody of the child." In re Byrd (1981),66 Ohio St.2d 334, 338.
 "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct."
Miller v. Miller (1988), 37 Ohio St.3d 71, 74 (internal citations omitted). We note that the instant case is a legal custody case as defined by R.C. 2151.011(B)(9), where the children were legally placed with their father or step-father,[1] rather than a permanentcustody case as defined by R.C. 2151.011(B)(11), where the children were legally placed with the state and parental rights are terminated. The most significant difference between the two dispositions is that in a permanent custody case parental rights are terminated and in a legal custody case residual parental rights remain. See In re Hitchcock
(1996), 120 Ohio App.3d 88. Before a court terminates parental rights in a permanent custody case, it must make detailed statutory findings under R.C. 3109.04 concerning the best interest of the child. However, the standard for awarding legal custody to a parent or nonparent, as in the case at hand, is not as stringent because the disposition is not as extreme.
 "While there does not appear to be any definitive test or set of criteria to apply in determining the best interest of a child in parental custody proceedings incident to a dependency and neglect action, this court has previously held that the juvenile courts should consider the totality of the circumstances, including, to the extent they are applicable, those factors set forth in R.C. 3109.04(F). There is, however, no statutory mandate that they be expressly considered and balanced before fashioning an award of custody under R.C. 2151.353(A)(3)."
In re Fulton, Butler App. No. CA2002-09-236, 2003-Ohio-5984 (internal citations omitted).
 {¶ 12} The 3109.04(F)(1) factors that may be applicable to the instant case are:
 "(a) The wishes of the child's parents regarding the child's care;
 * * *
 "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 * * *
 "(e) The mental and physical health of all persons involved in the situation;
 * * *
 "(h) * * * whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child."
 {¶ 13} In the instant case, the record shows that appellant completed the parenting and domestic violence classes, and had a psychological evaluation. However, the court made the following findings in its October 27, 2005 custody order:
 "[D]uring the pendency of this case, the Mother moved five (5) times in this two (2) year period and is presently residing in a new residence since approximately June of 2005, which has two (2) bedrooms with two bunk beds and a single bed; Mother is presently living in this home with another child, not subject to this action; Mother is presently unemployed; Mother is presently working with a parent aide in her home.
 "* * *
 "[T]here are ongoing concerns with Mother's ability to re-direct her children[s]' behaviors, ability to control the behavior of the children and apply appropriate discipline measures * * *.
 "* * *
 "Mother has not had over-night visitation with the children since June 2003;
 "* * *
 "[Although Mother has a bond with the children, she lacks the appropriate decision making abilities as it relates to the seven children * * *. Mother has been repeatedly observed lacking the ability to interact and care for the children during visitation sessions.
 "* * *
 "CCDCFS did not willfully and/or purposely engaged [sic] in a pattern of bias against the Mother. To the contrary the evidence presented supports the offering of various programs to attempt to have Mother comply and complete her referred services in hopes of possible reunification and that to date, although Mother has completed services in her case plan, Mother is still in need of on-going services in regard to her parenting abilities."
 {¶ 14} The record also establishes that appellant has previously had her parental rights terminated as to five other children. Furthermore, legal custody of another child of appellant's was awarded to the maternal grandmother. Appellant's relationship with CCDCFS regarding her children dates back 20 years, to 1985. During the birth of one of appellant's 14 children, appellant suffered a stroke that left her speech and memory impaired. Appellant is currently unemployed and her only sources of income are social security and welfare checks. Additionally, evidence was presented that appellant has a history of engaging in acts of domestic violence in front of her children.
 {¶ 15} On the other hand, in the October 27, 2005 order awarding legal custody of the children to the father, the court found the following relating to the father:
 "Father has completed parenting classes; completed domestic violence classes and has appropriate housing for himself and the children. Father resides in the home of paternal grandmother and that there are seven beds for the children and a bed for the father. Father has had overnight visitation with the children since January of 2005 and visits have been appropriate. Father is employed presently and in agreement to a parent aide being placed in the home if court ordered; * * * Father has a strong, positive bond with all the children; * * *."
 {¶ 16} Additionally, the court found that separating the children would not be in their best interest. Finally, there is evidence in the record that at least four of the children have developmental, behavioral and/or physical concerns and are in need of services.
 {¶ 17} Appellant argues that in consideration of the totality of the circumstances, she "demonstrated at least equal, if not better, qualification for an award of legal custody compared to the children's father." However, a review of the record does not support appellant's position that she was better qualified than, or as equally qualified as, the father to care for the seven children.
 {¶ 18} In support of her motion for legal custody, appellant presented the testimony of two representatives from the Dasi-Ziyad Family Institute, from whom she had been receiving independent parenting counseling for approximately two months. They testified that she was making a positive effort and progressing in her parenting skills, and that they considered her a success story within their parenting and development program. Appellant also testified on her own behalf; however, her testimony regarding the children was vague, confusing, and at times, inconsistent. An example from CCDCFS' cross-examination of appellant follows:
"Q. Okay. Now, you just talked a little bit about the kids. How old is[J.]? A. [J.] is seven.
 Q. And you think he'll be going into first grade?
 A. I hope he is.
 Q. Did he go to school last year?
 A. Yes.
 Q. Where did he go?
 A. I don't know.
 Q. You don't know the name of the school?
 A. I know the name of (inaudible) was.
 Q. Do you know where he went last year?
 A. No.
 Q. How old is [M.]?
 A. She is six.
 Q. And did she go to school last year?
 A. To my knowledge. I believe so.
 Q. Do you know where she went to school?
 A. No.
 Q. Do you [know] what grade she would have been in?
 A. This year I'm hoping she's in first grade.
 Q. [J.] is seven and [M.] is six, but they're both going to be goingto first grade? Are they close in their age in their birth dates?
 A. They might be 11 months apart.
 Q. So they could be both going into first grade, correct?
 A. Oh, [J.] failed to my knowledge.
 Q. Last year he needed to repeat?
 A. Yes.
 Q. Was he in first grade then last year and he needed to repeat?
 A. He was going to kindergarten last year.
 Q. Okay. How about [K.]? How old is [K.]?
 A. [K.] (inaudible).
 Q. Could she almost be five maybe? Do you know her birth date?
 A. January 11th.
Q. Do you know what year she was born?
 A. 2000.
 Q. Okay. So she could be five maybe? It's 2005, now she would befive
 you think?
 A. (Inaudible.)
 Q. Is she in school?
 A. I don't know.
 Q. Will she start school this year?
 A. I hope so."
 {¶ 19} The father testified on his own behalf in support of his motion for legal custody, stating that he wanted custody of all seven of the children, including his stepson. He stated that he was employed, he lived with his mother who would be available to help him with the children, and the house they lived in had a bed for each of the seven children. Furthermore, the father testified as follows during cross-examination regarding the children's schooling:
"Q. What grade is [J.] in?
 A. He is just starting first.
 Q. Okay. Was he in kindergarten last year?
 A. Yes.
 Q. What about the other children? What grade are they in?
 A. [M.]'s starting first, [K.]'s starting kindergarten along with[A.]. The rest are in preschool or Head Start or day care."
 {¶ 20} CCDCFS called three witnesses to support its motion to grant legal custody to the father: Carol Hutton, a CCDCFS social worker, and Alicia Moody and Patricia Gordon, both CCDCFS parent aides. Hutton and Moody testified that although appellant initially made progress, by the spring of 2005, her parenting skills began to decline. They also stated that appellant did not obtain her case plan goals regarding parenting and domestic violence. Hutton and Moody further testified that the father has made substantial progress on his case plan and that it is in the children's best interest to reside with him. Gordon testified that she only had four visits with appellant and no visits with the father — she did not offer a conclusory opinion on the custody motions.
 {¶ 21} The children's guardian ad litem recommended that appellant be awarded custody of two children and the father awarded custody of the remaining five children, as long as all the children had regular and frequent visitations with each other. He also recommended an order of protected supervision to help with the custody transition.
 {¶ 22} After assessing the testimony offered by the appellant, the father and CCDCFS, the court awarded custody of all seven children to the father, following CCDCFS' recommendation. The court did not follow the children's guardian ad litem's recommendation to split custody, finding that it was in the children's best interest to remain together. Furthermore, the weight and credibility given to the various witnesses, including Dasi-Ziyad Family Institute representatives, CCDCFS representatives, appellant and the father, is within the court's discretion. Given the totality of the circumstances, we cannot say that the court abused this discretion when it granted the father's motion for legal custody. Appellant's three assignments of error are overruled.
Judgment affirmed.
It is ordered that appellees recover from appellant costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, P. J., and SEAN C. GALLAGHER, J., CONCUR
[1] In the instant case, the disposition of all seven children is subject to the same legal standard, despite that [S.W.] is the biological father of six children and the stepfather of the seventh child. See In re D.P., Franklin App. No. 05AP-118, 2005-Ohio-5097 (holding that "[w]here a dependency determination has already occurred, the court need only determine the best interest of the child before granting legal custody to a nonparent. Accordingly, when there has been a dependency determination there has already been to some degree a finding of parental unsuitability and a juvenile court is not required to make another, separate finding of parental unsuitability when determining a dependent child's disposition").