[Cite as *In re M.B.*, 2017-Ohio-7481.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105168**

# IN RE: M.B., ET AL.
# Minor Children

[Appeal by David Pravlik, et al.]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD13904501 and AD13904502

**BEFORE:** Laster Mays, J., McCormack, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** September 7, 2017

-i-

**ATTORNEY FOR APPELLANTS**

Loretta Riddle
714 Franklin Street
Sandusky, Ohio 44870


**FOR APPELLEES**

**Attorneys for CCDCFS**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:   Joseph M. Cordiano
Assistant County Prosecutor
3955 Euclid Avenue
Cleveland, Ohio 44115

**Attorneys for Mother J.B.**

Mark Stanton
Cuyahoga County Public Defender

By:   Morgan L. Pirc
Assistant County Public Defender
9300 Quincy Avenue, 5th Floor
Cleveland, Ohio 44106

**Attorney for Father R.F.**

Michael B. Telep
4438 Pearl Road
Cleveland, Ohio 44109

**Attorney for Child R.F.**

Sheila Sexton
McNamara, Hanrahan, Callender & Loxtermann
P.O. Box 1206
Willoughby, Ohio 44096

**Guardian Ad Litem for Children**

Mary E. Bush
9373 Kings Hollow Court
Mentor, Ohio 44060

**For Maternal Great Aunt**

A.B., pro se
853 Helmsdale Road
Cleveland Heights, Ohio 44112

ANITA LASTER MAYS, J.:

{¶1} Appellants David and April Pravlik ("the Pravliks") appeal the juvenile court's decision to deny them legal custody of the two foster children in their temporary custody and place them in the legal custody of their biological great aunt. For the reasons that follow, we affirm.

## I.   Facts

{¶2} M.B. and R.F. were placed temporarily in their care for three and a half years after the Cuyahoga County Division of Children and Family Services ("CCDCFS"), determined that their biological mother was unable to adequately care for them. In August 2015, there was a motion pending to give CCDCFS permanent custody, with the intent of transferring legal custody of M.B. and R.F. to the Pravliks. Permanent custody was denied.

{¶3} Subsequently, the biological great aunt was brought to CCDCFS's attention and visitation was permitted. In September 2016, a hearing was held on motions by the Pravliks and the great aunt for legal custody of the children. The juvenile court decided to place M.B. and R.F. with their biological great aunt,[1] considering the following:

> The interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the foster parent(s) who is not a relative of the child;

---

[1] The juvenile court issued separate, but identical journal entries for M.B. and R.F.

The geographical location of the residence of the parent, siblings, relatives, and foster parents, and the distance between those residences;

The child's and proposed legal custodians' available time, including, but not limited to employment schedules, the child's school schedule, and holiday and vacation schedules;

The age of the child;

The child's adjustment to home, school, and community;

The health and safety of the child;

The amount of time that will be available for the child to spend with siblings;

The mental and physical health of all parties;

The wishes and concerns of the child's parent; and

The recommendation of the guardian ad litem for the child.

**{¶4}** The Pravliks filed this timely appeal and assert two assignments of error.

I.     The trial  court [errs] and prejudices a party and the children when it uses the wrong standard in making its decision and places a burden on a party when one does not exist and fails to make a decision regarding legal custody without using the best interest of the child standard; and

II.    The trial court [errs] and abuses its discretion when its decision is contrary to law and against the manifest weight of the evidence.

## II. Best Interest of the Children

### A. Standard of Review

{¶5} An appellate court understands that

> [a] trial court's decision concerning the allocation of parental rights and responsibilities rests within the sound discretion of the trial court. *In re A.M.S.*, 8th Dist. Cuyahoga No. 98384, 2012-Ohio-5078, ¶ 17, citing *In re D.J.R.*, 8th Dist. Cuyahoga No. 96792, 2012-Ohio-698. Specifically, the trial court's determination of what is in the best interest of the child will not be disturbed absent an abuse of discretion. *Drees v. Drees*, 3d Dist. Mercer No. 10-13-04, 2013-Ohio-5197, ¶ 20. An abuse of discretion suggests that the trial court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Under this standard, an appellate court may not merely substitute its judgment for that of the trial court. *Id.*

*In re A.P.D.*, 8th Dist. Cuyahoga No. 100504, 2014-Ohio-1632, ¶ 10.

### B. Law and Analysis

{¶6} In the Pravliks' first assignment of error, they argue that the juvenile court erred and prejudiced them and the children when the juvenile court failed to use the best interest of the children standard when deciding legal custody for the children. Specifically, the Pravliks believe that the court used the clear and convincing standard instead of the best interest of the children standard. The juvenile court's journal entry stated, "with the absence of clear and convincing evidence that the relative is unsuitable, the [c]ourt finds that the relative is a suitable member of the child's extended family for legal custody of the child."

{¶7} The Pravliks believed that the juvenile court incorrectly gave preference to the children's biological family under R.C. 2151.412(H)(2), when awarding custody to

the great aunt over them. They cite *In re C.H.*, 8th Dist. Cuyahoga No. 103171, 2016-Ohio-26, which states, "[n]o preference exists for family members, other than parents, in custody awards." *Id.* at ¶ 27, citing *In re M.W.*, 8th Dist. Cuyahoga No. 96817, 2011-Ohio-6444, ¶ 27, and *In re Jaron Patterson*, 1st Dist. Hamilton No. C-090311, 2010-Ohio-766, ¶ 27.

**{¶8}** Our review of R.C. 2151.412(H)(2) reveals that it governs case plans and not custody determinations. It states,

> In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be *guided* by the following general priorities: * * *; (2) If both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family.

(Emphasis added.) R.C. 2151.412(H)(2).

**{¶9}** However, under R.C. 2151.353(A)(3), a court may make an award of legal custody of the children to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child and signs a statement of understanding for legal custody that contains at least four provisions according to the statute. The record reveals that the great aunt complied with this requirement. Additionally, the record reveals that after the juvenile court based its decision on the best interest of the children standard it

then used the general priorities as stated in R.C. 2151.412(H)(2) as a factor that tipped the scales when it decided legal custody.

{¶10} The juvenile court stated on the record that it found the Pravliks were suitable, nonrelatives for the legal custody of the children. The juvenile court considered the guardian ad litem's recommendation to grant legal custody to the Pravliks. However, it determined that the maternal great aunt of the children was suitable as well.

{¶11} The record reveals that the juvenile court first used the best interest of the children standard in making its legal custody decision regarding the children. The court stated in its journal entry,

> [t]he [C]ourt finds and concludes that the alleged father of the child has abandoned the child; that the mother is incapable of supporting or caring for the child even with reasonable assistance; and that the parent(s) have allowed or caused the child to suffer neglect and that the likely recurrence of the neglect would have a detrimental effect on the health, safety, and best interest of the child due to their failure to remedy the conditions which caused the removal of the child such that the child should be placed in the legal custody of a suitable member of the child's extended family, and said placement would serve in the best interest of the child.

"Although the statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, the [Ohio appellate courts] have previously held that the juvenile court must base such a decision on the best interest of the child." (Citation omitted.) *In re R.R.*, 9th Dist. Summit No. 23641, 2007-Ohio-4808, ¶ 12. "In legal custody cases, trial courts should consider all factors relevant to the best interest of the child." *In re S.J.*, 9th Dist. Summit No. 23199, 2006-Ohio-6381, ¶ 34. "[T]he factors

contained in R.C. 2151.414(D) may provide guidance to the trial court in making an award of legal custody." *In re R.R.* at ¶ 12.

{¶12} The juvenile court decided that granting the great aunt legal custody of the children was in their best interest. The juvenile court considered the relationship between the children and their relatives, including their parent, siblings, and other related persons. It also considered the geographical location of the residence of the parent, siblings, relatives, and foster parents, and the distance between those residences; the children's and proposed legal custodians' available time, including, but not limited to employment schedules, the children's school schedule, and holiday and vacation schedules; the age of the children; the children's adjustment to home, school, and community; the health and safety of the children; the amount of time that will be available for the children to spend with siblings; the mental and physical health of all parties; the wishes and concerns of the children's parent; and the recommendation of the guardian ad litem for the children. Upon the consideration of these factors, the juvenile court determined that it was in the best interest of the children to place them with their great aunt.

{¶13} We find that the record indicated that both parties were suitable for legal custody. We also find that after the juvenile court determined that both parties were suitable for legal custody, using the best interest of the child standard, the court did not err by relying upon the R.C. 2151.412(H)(2) preference to grant legal custody of M.B.

and R.F. to their maternal great aunt for guidance. The first assignment of error is overruled.

{¶14} The Pravliks also argue that the juvenile court erred and abused its discretion when its decision was contrary to law and against the manifest weight of the evidence. Specifically, they contend that the juvenile court abused its discretion when it did not use the best interest of the child standard to make its decision. To constitute an abuse of discretion, the ruling must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶15} As we stated above, the juvenile court did use the best interest of the child standard and its decision was, therefore, not contrary to law.

> When evaluating whether a judgment is against the manifest weight of the evidence in a civil action, the court uses virtually the same standard of review as in the criminal context. *In re Washington*, 143 Ohio App.3d 576, 758 N.E.2d 724 (2001). [In] *In re M.M.*, 8th Dist. Cuyahoga No. 79947, 2002 Ohio App. LEXIS 463, (Feb. 7, 2002), this court explained that standard as applied to a custody case: "In civil cases, we review a manifest weight challenge to determine whether some competent, credible evidence supports the judgment. The criminal standard, while stated in more detail and arguably requiring a more searching review, also focuses on the credibility of evidence, allowing a judge or reviewing court to consider not only the sufficiency of evidence, but the quality of evidence introduced. While a juvenile custody proceeding is not a criminal matter, it is consistently recognized as implicating important rights deserving of more scrutiny than the ordinary civil proceeding. Therefore, to the extent the civil manifest weight review is less demanding than that in criminal matters, in juvenile proceedings such review should more closely approximate the criminal standard. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus; *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997); *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983)."

(Footnote omitted.) *In re M.H.*, 8th Dist. Cuyahoga No. 80620, 2002-Ohio-2968,

¶ 17.

> **{¶16}** We understand that
>
> [t]he juvenile court has had the opportunity to view the witnesses and evaluate their demeanor. *See In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424 (1994). Accordingly, before this court will reverse a judgment as being against the manifest weight of the evidence, we must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.

*Id.* at ¶ 21. After a review of the record, we find that the court did not create a manifest miscarriage of justice and did not abuse its discretion. The Pravliks' second assignment of error is overruled.

> **{¶17}** Judgment affirmed.

It is ordered that the appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

TIM McCORMACK, P.J., CONCURS IN JUDGMENT ONLY;
FRANK D. CELEBREZZE, JR., J., CONCURS WITH SEPARATE OPINION

FRANK D. CELEBREZZE, JR., J., CONCURRING:

**{¶18}** I concur with the majority's opinion and resolution of this case. I am compelled to write separately, however, to express my belief that this is one of the most challenging — if not *the* most challenging — custody determinations that I have been obligated to make in my 17-year career on the appellate bench. I must compliment appellants for taking extraordinary measures and exercising the utmost diligence in caring for these children. The fact that appellants went above and beyond in pursuing the children's best interest, loved and supported the children as if they were their own, and continue to love and support these children, makes this case all the more difficult.