[Cite as *In re B.D.*, 2017-Ohio-8663.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105650**

# IN RE: B.D.
# A Minor Child

[Appeal By Mother]

## JUDGMENT:
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD13916853

**BEFORE:** S. Gallagher, J., Keough, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** November 22, 2017

**ATTORNEY FOR APPELLANT**

Patrick S. Lavelle
Van Sweringen Arcade
123 West Prospect Street, Suite 250
Cleveland, Ohio   44115


**ATTORNEYS FOR APPELLEES**

**For C.C.D.C.F.S.**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:   Timothy D. Smanik
          Cheryl Rice
Assistant Prosecuting Attorneys
C.C.D.C.F.S.
3955 Euclid Avenue, Third Floor
Cleveland, Ohio   44115


**For T.D. and K.D.**

Pamela A. Hawkins
P.O. Box 43101
Richmond Heights, Ohio   44143


**Also listed:**

**Guardian ad litem**

Troy M. Hough
21887 Lorain Road, #306
Cleveland, Ohio   44126
**For Father**

S.D., pro se
5763 Portage Avenue

Cleveland, Ohio   44127

SEAN C. GALLAGHER, J.:

{¶1} Appellant Mother appeals the juvenile court's decision to award legal custody of her child, B.D., to the foster parents, who are the appellees herein. Upon review, we reverse the decision of the juvenile court that granted legal custody to the appellees, and we order the termination of protective supervision and the immediate return of the child to Mother's legal custody.

{¶2} On November 20, 2013, the Cuyahoga County Department of Children and Family Services ("CCDCFS") filed a complaint alleging B.D. was dependent and requesting a disposition of temporary custody. A hearing was held, and B.D., then a newborn infant, was committed to the pre-adjudicatory emergency temporary custody of CCDCFS.

{¶3} On January 24, 2014, an adjudicatory hearing was held. Mother stipulated to certain allegations in the amended complaint, including, among others, (1) that Mother has three other children who were adjudicated dependent because of Mother's lack of parenting skills and domestic violence between the parents, and which children are in the temporary custody of a relative; (2) that Mother has mental health problems that may interfere with her ability to make safe and adequate choices for B.D.; and (3) that Mother lacks adequate housing to provide for the child's basic shelter needs. The juvenile court found B.D. to be a dependent child and granted temporary custody to CCDCFS. The juvenile court conducted a number of review hearings at which it continued temporary custody of B.D. to CCDCFS.

{¶4} On July 8, 2014, CCDCFS filed a motion to modify temporary custody to permanent custody. In August 2015, the foster parents filed a motion to intervene that was granted, and they also filed a motion for legal custody.

{¶5} However, on November 5, 2015, CCDCFS filed a motion to withdraw its earlier motion to modify temporary custody to permanent custody and a motion to terminate temporary custody. CCDCFS indicated that Mother "has successfully completed the case plan and has remedied the risks that initially caused the child to be removed." CCDCFS expressed its belief that it would be in the best interest of the child to be returned to Mother and requested that Mother be vested with legal custody of the child with no restrictions.

{¶6} A hearing was held on the motions, and B.D. was returned to Mother with protective supervision on March 29, 2016. The magistrate issued a decision that was adopted by the juvenile court in a judgment entry filed April 18, 2016. The juvenile court indicated the motion for permanent custody and the motion for legal custody were withdrawn and "[t]he parties are in agreement with the child reunifying with the [m]other." The juvenile court found that "[t]here has been significant progress on the case plan by the mother and substantial progress has been made in alleviating the cause for the removal of the child from the home." The juvenile court also found that the father had abandoned the child. The juvenile court determined that it would be in the child's best interest to return to Mother's home and to have continued visitation by the foster parents. The juvenile court terminated temporary custody, ordered the child be

committed to the legal custody of Mother with protective supervision, and ordered reasonable visitation to the foster parents during the period of protective supervision.

{¶7} On July 5, 2016, CCDCFS filed a motion to terminate protective supervision and requesting that the court grant legal custody to Mother with no restrictions. CCDCFS indicated in its motion that the social worker had monitored the family by making regular visits to the home and that "mother has been providing the proper care for the child and [has] been providing for all of the child's basic needs." CCDCFS further expressed that "[c]ooperative efforts with CCDCFS have reduced the risk to the child so as to allow him to remain in the home unsupervised by CCDCFS."

{¶8} The next day, the foster parents filed a motion for legal custody of B.D. The foster parents stated that they had provided care for the child for the majority of his young life and advocated for a grant of legal custody to the foster parents as being in the child's best interest.

{¶9} The juvenile court held a hearing on December 14, 2016. At that time, B.D. was three years old. CCDCFS represented that Mother had completed her case plan and expressed its belief that protective supervision was no longer necessary. CCDCFS indicated that "[Mother] has had the child for nearly nine months in her care without incident and we believe she's taken appropriate care of the child" and that "[Mother] has demonstrated her ability to provide for this child's safety and basic needs without the Agency's involvement[.]"

{¶10} The social worker testified that as a result of a domestic violence case, there was a no-contact order between Mother and B.D.'s biological father. Father did not participate in case plan services, and the juvenile court previously found that Father had abandoned B.D. and his visitation rights were suspended. Mother reported that she has not had contact with the father.

{¶11} The social worker testified that Mother is employed through a temporary agency and that she has provided for all of the medical needs for the child. Mother was renting a home from a family friend, and under an arrangement she paid utilities and no rent. The social worker was aware that B.D. had tested positive for high blood glucose levels, indicated Mother had stated she had an upcoming doctor's appointment for the child, and noted there were no concerns from the child's prior medical visits.

{¶12} The social worker observed some behavioral problems when B.D. first returned to Mother's home, but testified she was no longer seeing any of those problems. The social worker noted two referrals that had been made regarding safety issues since the child was reunified with Mother. One was an unsubstantiated report regarding Mother and the child being homeless. The other was that Mother was in a relationship with a man who had a history of sexual abuse with children. The outcome of the social worker's investigation was that the referral was unsubstantiated. The social worker also discussed Mother's first child having been the product of sexual abuse by Mother's biological brother when she was a teenager. The family never reported the sexual abuse.

{¶13} The social worker testified to appropriate interactions between Mother and her child, to Mother's care of the child, and to the child's development. The social worker testified that the agency had no concerns and that Mother was able to provide for the child's basic needs.

{¶14} The foster mother testified that she observed behavioral concerns with B.D. after his return to Mother. She also noted concerns such as the child's head being shaved because of issues with lice, his shoes smelling of urine, smoking around the child, and suspicions that the child was being shuffled around to his aunts or cousins. The foster mother also expressed her suspicion that the child's father, who had a history of domestic violence and child endangering, was still in Mother's life. The foster mother testified that Mother had informed her the child had met his father and ran to him and called him "daddy." The foster mother also testified to observing an October 2016 Facebook post in which Mother purportedly commented on having been with the child's father for seven years and left him "two months ago." The foster mother admitted she could not say with 100 percent certainty that the Facebook page was actually Mother's page. The foster father also testified at the hearing.

{¶15} The guardian ad litem testified that he saw "nothing wrong with mother's home" and that he believes Mother "is an appropriate caregiver." He indicated that Mother had completed all areas of her case plan and had stable housing for over a year. Nonetheless, the guardian ad litem expressed that the child had been in the foster home

since he was two days old and that "given the family's history with mother, although she means well, I do not see a bright future for [the child]."

{¶16} In his report and recommendation of December 5, 2016, the guardian ad litem observed that the child "appeared healthy and happy" and "both homes were clean and appropriate in all respects." The guardian ad litem also observed that the child appeared bonded to both his mother and his foster parents and that "both parties' interactions with the child were appropriate in all respects."

{¶17} The guardian ad litem acknowledged that Mother had completed all elements of her case plan and appeared capable of providing for the child's basic needs. Although the guardian ad litem expressed that he had "no concerns for the child's safety if left in Mother's custody," he nevertheless recommended that the court grant legal custody to the foster parents. The guardian ad litem referenced Mother's family history and financial instability, and expressed his belief that "if left in [Mother's] custody, [the child's] future will be one of ignorance and poverty."

{¶18} The foster parents submitted proposed findings of fact and conclusions of law. On January 3, 2017, the juvenile court issued a decision that granted legal custody to the foster parents, finding that "mother would more likely than not subject the child to perpetual low level neglect throughout the child's minority." The juvenile court "gave significant weight" to the recommendation of the guardian ad litem. Additionally, the juvenile court concluded that "until protective supervision is terminated[,] the conclusion

of [parental] unsuitability stands." The juvenile court further concluded that "an order of legal custody of the child to [the foster parents] is in the child's best interest."

{¶19} Mother timely filed this appeal. She raises two assignments of error for our review. Under her first assignment of error, Mother claims her right to due process was violated because the juvenile court awarded legal custody without determining that she was unsuitable.

{¶20} The Supreme Court of Ohio has held that once a child has been adjudicated dependent, a juvenile court has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, paragraph one of the syllabus. As the court recognized in *In re C.R.*, "[a] juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents." *Id.* at ¶ 23. Furthermore, "no statute requires a finding of parental unfitness as a prerequisite to an award of legal custody in cases where a child is adjudged abused, neglected, or dependent." *Id.* at ¶ 21.

{¶21} Mother claims this case is distinguishable and argues against application of the holding in *In re C.R.* because the child had been returned to her legal custody.[1]

---

[1] Mother cites to private custody cases not involving allegations of abuse, neglect, or dependency, in which a court is required to make a finding of parental unsuitability prior to awarding custody of a child to a nonparent. *See In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971; *In re Perales*, 52 Ohio St.2d 89, 369 N.E.2d 1047 (1977). Those cases were distinguished in *In re C.R.* as they were private custody matters that did not involve an award of legal

However, the record reflects that the placement with Mother was ordered with protective supervision and CCDCFS's involvement in the case had not been terminated. Thus, the holding in *In Re: C.R.* remains controlling. Moreover, nothing in R.C. 2151.353 requires a finding of unsuitability before awarding legal custody. Rather, the court's primary concern is the best interest of the child. *In re B.J.*, 8th Dist. Cuyahoga Nos. 104800 and 104801, 2017-Ohio-315, ¶ 14. Accordingly, the first assignment of error is overruled.

{¶22} Under her second assignment of error, Mother claims the award of legal custody is against the manifest weight of the evidence.

{¶23} Initially, we must reiterate that a stated purpose of R.C. Chapter 2151 is "[t]o provide for the care, protection, and mental and physical development of children" and whenever possible, the child is to remain in a family environment and should be separated from the child's parents "only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A). *See also In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 29; *In re B.J.* at ¶ 13.

{¶24} Pursuant to R.C. 2151.353(A), after a child has been adjudicated abused, neglected, or dependent, the court may "[a]ward legal custody of the child to * * * any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings." R.C. 2151.353(A)(3). "An award of legal custody does not divest parents of residual parental

custody of a child who had been adjudged abused, neglected, or dependent. *In re C.R.* at ¶ 18-21.

rights and responsibilities and does not permanently foreclose the right of either parent to regain custody in accordance with the law." *In re G.W.*, 8th Dist. Cuyahoga No. 103706, 2016-Ohio-5242, ¶ 15, citing *In re C.R.* at ¶ 23; *see also* R.C. 2151.42.

**{¶25}** The juvenile court must determine the appropriateness of legal custody in accordance with the best interest of the child as supported by the preponderance of the evidence. *In re G.W.* at ¶ 21. A "preponderance of the evidence" requires evidence that is more probable, more persuasive, or of greater probative value. *Id.*, citing *In re T.R.*, 8th Dist. Cuyahoga No. 102071, 2015-Ohio-4177, ¶ 44.

**{¶26}** In determining the best interest of the child in a legal custody case, the juvenile court should consider all relevant factors, and may look to the factors listed under R.C. 2151.414(D), which pertains to permanent custody cases, for guidance. *In re M.B.*, 8th Dist. Cuyahoga No. 105168, 2017-Ohio-7481, ¶ 11. Those factors include the interaction of the child with the child's parents, relatives, and caregivers; the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; the custodial history of the child; and the child's need for a legally secure permanent placement. R.C. 2151.414(D). R.C. 2151.414(D).

**{¶27}** The evidence in this case reflects that the interaction of the child with both Mother and the foster parents was appropriate, and the juvenile court found that both parties have a loving relationship with the child. The social worker testified to observing appropriate interactions between Mother and B.D., and she testified that Mother was able to provide for the child's basic needs. Although certain referrals had been made to the

agency, they were investigated and found to be unsubstantiated. The guardian ad litem found Mother's home and her interactions with the child to be "appropriate in all respects."

{¶28} The child was too young to express his wishes. The guardian ad litem acknowledged in his report that Mother appeared capable of providing for the child's basic needs and expressed he had no safety concerns for the child if left in Mother's custody. Despite his observations, the guardian ad litem supported a grant of legal custody to the foster parents, over a concern that the child's future would be "one of ignorance and poverty" if left in Mother's custody.

{¶29} During the pendency of the case, the child had been placed in the care of the foster parents from November 2013 until March 2016, when the child was returned to Mother's legal custody with protective supervision. At the time of the hearing, the child had been with Mother for nearly nine months without incident. Mother had completed all case plan services, and CCDCFS was in favor of granting legal custody of B.D. to Mother with no restrictions.

{¶30} Although the foster parents, who desired to have legal custody, expressed some concerns and suspicions, the record was devoid of any compelling reasons not to grant CCDCFS's request. Although we can appreciate the bond that has developed between the foster parents and B.D., we must recognize that the right to parent one's child is a fundamental right. *In re B.J.*, 8th Dist. Cuyahoga Nos. 104800 and 104801,

2017-Ohio-315, at ¶ 12, citing *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

**{¶31}** Our review reflects that no competent, credible evidence supports the juvenile's court's determination that "an award of legal custody to mother would be detrimental to the child." The juvenile court gave "significant weight" to the guardian ad litem's recommendation, which reflected no more than a concern for the child's quality of life if left in Mother's care. The juvenile court speculated that Mother "would more likely than not subject the child to perpetual low level neglect[.]"

**{¶32}** Nevertheless, in this particular case, the evidence showed that Mother had complied with case plan services, CCDCFS had moved to grant legal custody to Mother with no restrictions, the child had been returned to Mother's care for nearly nine months without incident, and both the social worker and the guardian ad litem had no safety concerns and believed Mother to be an appropriate caregiver. Upon this record, the trial court erred in failing to determine an award of legal custody to Mother would be in the best interest of the child.

**{¶33}** Upon the record before us, we find the juvenile court's best-interest determination was not supported by a preponderance of the evidence and was against the manifest weight of the evidence. The preponderance of the evidence shows B.D.'s best interest, as well as the purpose of R.C. Chapter 2151, is served by granting legal custody to Mother without restriction. The second assignment of error is sustained.

**{¶34}** Judgment reversed. Case remanded to the juvenile court to carry this judgment into execution.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, A.J., CONCURS;
FRANK D. CELEBREZZE, JR., J., CONCURS IN JUDGMENT ONLY