[Cite as *In re S.G.*, 2020-Ohio-4060.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE S.G., ET AL.  :

Minor Children  :

    :

[Appeal by N.G., Mother]  :

    :

    :

    :

No. 108711

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** DISMISSED
**RELEASED AND JOURNALIZED:** August 13, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD18906135 and AD18906136

---

***Appearances:***

Scalise Legal Services, L.L.C., and Stephanie Scalise, *for appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Appellant N.G., the mother of S.G. and A.G., ("Mother") appeals from the juvenile court order awarding legal custody of S.G. and A.G. to T.R., the biological father of S.G. and an interested individual to A.G.

{¶ 2} Mother's appointed counsel has filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), in which she asserted that following her examination of the record there are "no meritorious

appellate issues that can be raised." This court held the motion in abeyance and afforded Mother an opportunity to file a pro se brief. Mother has failed to avail herself of that opportunity. Following an independent review, this court grants appointed counsel's motion to withdraw and we dismiss this appeal.

**Factual Background and Procedural History**

{¶ 3} On May 10, 2018, appellee Cuyahoga County Division of Children and Family Services ("CCDCFS" or the "agency") filed a complaint for neglect and temporary custody of S.G. (d.o.b. December 29, 2012) and A.G. (d.o.b. June 13, 2015). The complaint alleged that at approximately 7:30 p.m. on May 9, 2018, Mother had left the children without appropriate supervision or food in the home, that the children were found outside of the home, alone, at approximately 10:00 p.m. and that Mother did not return to the home until 3:00 a.m. The agency also filed a motion for predispositional temporary custody.

{¶ 4} The court conducted a hearing on the issue of predispositional temporary custody as Mother denied the allegations and objected to a finding of probable cause. The court granted the motion and committed the children to the temporary care and custody of CCDCFS.

{¶ 5} An amended complaint was filed on August 7, 2018 wherein the allegations were amended to reflect that, on May 9, 2018, Mother had left the children in the home with an inappropriate caregiver and that Mother was in need of parenting classes to improve her parenting skills and judgment.

{¶ 6} In September 2018, the juvenile court adjudicated the children neglected. The matter was continued for a dispositional hearing. On January 11, 2019, CCDCFS filed a motion to amend the dispositional prayer from temporary custody to CCDCFS to legal custody to T.R., the biological father of S.G. and interested individual to A.G.

{¶ 7} On April 4, 2019, the dispositional hearing was held before the magistrate. Rosalyn Bailey, an extended service social worker with CCDCFS, testified at the hearing. She stated that she had been assigned to the case since May or June 2018. According to Bailey, the initial case plan for each of the fathers was to establish paternity and to bond with and support his child. The initial case plan for Mother included parenting classes and, due to a history of substance abuse, submission to a urine screen to determine whether she had a need for substance abuse services.

{¶ 8} Bailey testified that Mother failed to comply with the case plan even though accommodations were made for her, at her request. She refused to submit to a urine screen and did not attend all of her parenting classes. On September 26, 2018, during visitation with the children at the West Side Community Collab, Mother took the children and left. It was not until 9:00 p.m. that night, after police tracked Mother's phone, that the children were located at the home of a cousin of Mother. Mother was not present. Following that incident, Mother's case plan was amended to include a mental health assessment. Mother failed to complete any of the case plan requirements and, after the incident, failed to meet with or contact

Bailey. Because Mother did not make herself available, Bailey could not state whether Mother's home was appropriate for the children.

{¶ 9} Bailey testified that paternity had been established for both children. Bailey stated that T.R., the father of S.G., had completed his case plan and had bonded with both S.G. and A.G. Bailey stated that T.R. had informed her that he wanted A.G. to stay with her sister, "that he didn't see any difference in them" and that he was prepared to provide a permanent home for both S.G. and A.G. She indicated that both T.R. and his wife, D.M., submitted to background checks and were approved by CCDCFS for placement. The children were placed with T.R. in December 2018 or January 2019.

{¶ 10} Bailey stated that, at the time of the hearing, Al.G., the father of A.G., was incarcerated at the Mansfield Correctional Institution and that no appropriate relative had been identified as a possible care provider for A.G.

{¶ 11} Bailey testified that she believed it was in the children's best interest to remain together and be placed in the legal custody of T.R. Although Bailey stated that she believes Mother loves the children, Mother could not care for them or meet their basic needs. Bailey stated that T.R. was employed, that his home was appropriate, that the children were doing well in his home and that he was able provide for their basic needs on a permanent basis.

{¶ 12} The guardian ad litem recommended that legal custody of the children be granted to T.R.

**{¶ 13}** On April 8, 2019, the magistrate issued her decision, recommending the termination of predispositional temporary custody to the agency and that legal custody of S.G. and A.G. be granted to T.R. The magistrate also recommended that Mother be granted supervised visitation with the children every Sunday from 2:00 p.m. to 6:00 p.m. Mother filed objections to the magistrate's decision.

**{¶ 14}** In June 2019, following a review of the court file, the magistrate's decision and Mother's objections, the juvenile court overruled Mother's objections and approved and adopted the magistrate's decision.

**Law and Analysis**

### *Anders* Standard

**{¶ 15}** *Anders* outlines the procedure that counsel must follow to withdraw due to the lack of any meritorious grounds for appeal. *Anders*, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493. In *Anders*, the United States Supreme Court held that if appointed counsel, after a conscientious examination of the case, determines an appeal to be wholly frivolous, he or she should advise the court of that fact and request permission to withdraw. *Id.* This request, however, must be accompanied by a brief identifying anything in the record that could arguably support the appeal. *Id.* Counsel must also provide the client with a copy of the brief and allow the client sufficient time to file his or her own brief. *Id.*

**{¶ 16}** Once the appellant's counsel satisfies these requirements, this court must fully examine the proceedings below to determine if any arguably meritorious issues exist. *Id.* If the court determines that the appeal is wholly frivolous, the court

may grant counsel's request to withdraw and dismiss the appeal. *Id.*; *see also State v. Sims*, 8th Dist. Cuyahoga No. 107724, 2019-Ohio-4975, ¶ 7-9.

{¶ 17} Although *Anders* arose in a criminal context, this court approved the application of the *Anders* procedure to an appeal from the juvenile court's decision on a motion for legal custody in *In re T.E.,* 8th Dist. Cuyahoga No. 104228, 2016-Ohio-5935, ¶ 31, 40; *see also In re J.B.*, 9th Dist. Summit No. C.A. No. 29443, 2020-Ohio-2917. Courts have also applied *Anders* in appeals involving the termination of parental rights. *See, e.g., In re A.M.*, 8th Dist. Cuyahoga No. 106789, 2018-Ohio-3186, ¶ 11.

{¶ 18} Previously, former Loc.App.R. 16(C) set forth the specific procedure governing *Anders* briefs and motions to withdraw followed by this court. That rule was amended on February 1, 2019 and no longer includes any procedure for the filing of *Anders* briefs. However, as this court has previously stated, "the absence of a local rule governing *Anders* briefs does not prevent this court from accepting these briefs nor from following the procedure the United States Supreme Court outlined in *Anders*." *Sims* at ¶ 7-14 (discussing "the duties of appellate counsel when filing an *Anders* brief and our duties when ruling on counsel's motion to withdraw on the grounds that the appeal would be frivolous" even in the absence of former Loc.App.R. 16(C), different Ohio appellate courts' views on *Anders* briefs and this court's decision that "until the Ohio Supreme Court resolves the split among the Ohio Appellate Districts regarding the application of *Anders* * * * we will continue to adhere to the procedures outlined in *Anders* pertaining to both counsel and the

court when appointed appellate counsel files a motion to withdraw because an appeal would be wholly frivolous"); *see also State v. Lariche*, 8th Dist. Cuyahoga No. 108512, 2020-Ohio-804, ¶ 7.

**Independent Review**

**Standard for Determining Legal Custody**

{¶ 19} Pursuant to R.C. 2151.353(A)(3), a juvenile court may award legal custody of a child who has been adjudicated abused, neglected or dependent "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings." "Legal custody" is

> a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.

R.C. 2151.011(B)(21). A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian must comply with various statutory requirements, including signing a statement of understanding for legal custody. R.C. 2151.353(A)(3).

{¶ 20} Legal custody is "significantly different" than the termination of parental rights. Unlike a case in which parental rights are terminated, when a parent loses legal custody of his or her child, the parent "retains residual parental rights,

privileges and responsibilities and is not permanently foreclosed from regaining custody." *In re M.S.*, 8th Dist. Cuyahoga No. 108567, 2019-Ohio-5128, ¶ 32, citing *In re T.R.*, 8th Dist. Cuyahoga No. 102071, 2015-Ohio-4177, ¶ 32, *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 14, and R.C. 2151.353(A)(3)(c).

{¶ 21} Nevertheless, an order granting legal custody of a child to a person under R.C. 2151.353(A) "is intended to be permanent in nature." R.C. 2151.42(B) ("A court shall not modify or terminate an order granting legal custody of a child unless it finds, based on facts that have arisen since the order was issued or that were unknown to the court at that time, that a change has occurred in the circumstances of the child or the person who was granted legal custody, and that modification or termination of the order is necessary to serve the best interest of the child.").

{¶ 22} Where a juvenile court considers an award of legal custody following an adjudication of abuse, neglect or dependency, "'it does so by examining what would be in the best interest of the child based on a preponderance of the evidence.'" *In re T.R.* at ¶ 44, quoting *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 11, 14. Thus, we apply the "preponderance of the evidence" standard of appellate review to the court's factual findings on a request for legal custody. *In re W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604, ¶ 2. A "preponderance of the evidence" means evidence that is "'more probable, more persuasive, or of greater value.'" *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7, quoting *In re D.P.*, 10th Dist. Franklin No. 05AP-117, 2005-Ohio-5097, ¶ 52.

{¶ 23} However, the decision whether to grant or deny a request for legal custody is within the sound discretion of the juvenile court. When reviewing a juvenile court's "'ultimate decision on whether the facts as determined would make it in the child's best interests to be placed in legal custody,'" we apply an abuse of discretion standard. *In re W.A.J.* at ¶ 2, quoting *In re G.M.*, 2011-Ohio-4090, at ¶ 14. A juvenile court abuses its discretion where its decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A decision is unreasonable if there is "'no sound reasoning process that would support that decision.'" *In re C.D.Y.*, 8th Dist. Cuyahoga No. 108355, 2019-Ohio-4987, ¶ 8, quoting *Baxter v. Thomas*, 8th Dist. Cuyahoga No. 101186, 2015-Ohio-2148, ¶ 21. A decision is arbitrary if it is made "'without consideration of or regard for facts [or] circumstances.'" *In re C.D.Y.* at ¶ 8, quoting *Black's Law Dictionary* 125 (10th Ed.2014).

{¶ 24} There is no "specific test or set of criteria" that must be applied or considered when determining what is in a child's best interest on a motion for legal custody. *In re T.R.*, 2015-Ohio-4177, at ¶ 48. Unlike permanent custody cases in which the juvenile court must consider the factors outlined in R.C. 2151.414(D), R.C. 2151.353(A)(3) does not independently specify the factors to be considered in determining what is in a child's best interest on a request for legal custody. *In re G.M.*, 2011-Ohio-4090, at ¶ 15. Nevertheless, this court has held that the R.C. 2151.414(D) best interest factors may be "instructive" in making that determination. *See, e.g., In re R.B.*, 8th Dist. Cuyahoga No. 107709, 2019-Ohio-1656, ¶ 48, 52; *In re*

*D.T.*, 8th Dist. Cuyahoga Nos. 100970 and 100971, 2014-Ohio-4818, ¶ 20, citing *In re E.A.*, 8th Dist. Cuyahoga No. 99065, 2013-Ohio-1193, ¶ 13; *see also In re B.D.*, 8th Dist. Cuyahoga No. 105650, 2017-Ohio-8663, ¶ 26 ("In determining the best interest of the child in a legal custody case, the juvenile court should consider all relevant factors, and may look to the factors listed under R.C. 2151.414(D) * * * for guidance."), citing *In re M.B.*, 8th Dist. Cuyahoga No. 105168, 2017-Ohio-7481, ¶ 11. Those factors include: (1) the interaction of the child with the child's parents, relatives, caregivers and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child and (4) the child's need for a legally secure permanent placement. R.C. 2151.414(D).

{¶ 25} Courts have also looked to the best interest factors set forth in R.C. 3109.04(F) as a potential guide in determining what is in a child's best interest for purpose of a motion for legal custody. *See, e.g., In re J.O.*, 8th Dist. Cuyahoga No. 87626, 2007-Ohio-407, ¶ 11; *see also In re K.S.*, 12th Dist. Warren Nos. CA2019-01-009 and CA2019-02-015, 2019-Ohio-2384, ¶ 37 ("As the paramount concern is the best interest of the child, the court 'should consider the totality of the circumstances affecting the best interest of the child.'" * * * A court may therefore consider the relevant best interest factors set forth in either R.C. 3109.04(F) or R.C. 2151.414(D) in determining the best interest of the child."), quoting *In re S.L.*, 12th Dist. Butler Nos. CA2012-07-137 through CA2012-07-142 and CA2012-07-147 through CA2012-07-149, 2013-Ohio-781, ¶ 54. Such factors include, but are not limited to (1) the

wishes of the child's parents regarding the child's care; (2) the child's interaction and interrelationships with the child's parents, siblings and any other person who may significantly affect the child's best interest; (3) the child's adjustment to home, school and community; (4) the mental and physical health of all persons involved in the situation and (5) the extent to which court-approved visitation and companionship rights are likely to be honored and facilitated. *See* R.C. 3109.04(F).

{¶ 26} In this case, the juvenile court made the following findings as to S.G.:

The Court finds that the child's continued residence in or return to the home of [N.G.], Mother will be contrary to the child's best interest.

The Court finds that the Cuyahoga County Division of Children and Family Services has made reasonable efforts to prevent removal of the child, to eliminate the continued removal of the child from home, or to make it possible for the child to return home and to make and finalize a permanency plan for the child. Parenting and drug screening. The Mother did not submit to drug testing and needs to complete parenting. The child has been residing with the Father since 12/2018. The Father's home is appropriate and the Father has been providing for the child's basic needs.

{¶ 27} The court made the following findings as to A.G.:

The Court finds that the child's continued residence in or return to the home of [N.G.], Mother will be contrary to the child's best interest.

The Court finds that the Cuyahoga County Division of Children and Family Services has made reasonable efforts to prevent removal of the child, to eliminate the continued removal of the child from home, or to make it possible for the child to return home and to make and finalize a permanency plan for the child. Parenting and drug screening. The Mother did not submit to drug testing and needs to complete parenting. The child has been residing with T.R., Interested Individual, since 12/2018. T.R.'s home is appropriate and he has been providing for the child's basic needs.

The Court finds that T.R., the proposed legal custodian for A.G., has signed a Statement of Understanding for Legal Custody.

{¶ 28} The record supports these findings by a preponderance of the evidence. The record shows that at the time of the hearing, S.G. and A.G. had been in the predispositional temporary custody of the agency for nearly a year and had been living with T.R. for four or five months. The record reflects that both children have a strong bond with T.R. and with each other, that they had been doing well when living with T.R., that his home was appropriate, safe and stable and that all of their basic needs were being met.

{¶ 29} The record further reflects that Mother had done almost none of the case plan services required of her, i.e., attending some but not completing parenting classes, refusing to submit to a urine screen or a mental health assessment and refusing to comply with the social worker's efforts to see her home to determine if it was appropriate for the children. The record further reflects that although Mother had, at times, been inconsistent with visitation, T.R. was willing to work with Mother and facilitate regular visitation between her and the children and with other family members.

{¶ 30} Following an independent examination of the record as required by *Anders*, we cannot say, based on the record before us, that the trial court abused its discretion in finding that an award of legal custody of S.G. and A.G. to T.R. was in the children's best interests.

{¶ 31} Accordingly, we agree that there is no merit to an appeal and that this appeal is wholly frivolous. We grant counsel's motion to withdraw and dismiss this appeal.

{¶ 32} Appeal dismissed.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

LARRY A. JONES, SR., J., CONCURS;
MARY J. BOYLE, P.J., DISSENTS WITH
SEPARATE OPINION

MARY J. BOYLE, P.J., DISSENTS WITH SEPARATE OPINION:

{¶ 33} I respectfully dissent. I disagree with the majority that we should grant appointed counsel's motion to withdraw pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). As I explained in my dissenting opinion in *State v. Sims*, 8th Dist. Cuyahoga No. 107724, 2019-Ohio-4975, it is now my view that this court should no longer permit appointed counsel to file an *Anders* brief or withdraw from a case. *Id.* at ¶ 60 (Boyle, J., dissenting). Although much of my reasoning in *Sims* applied when attorneys are appointed to represent indigent criminal defendants, it is my view that this reasoning extends to all appointed counsel. All attorneys, not just defense attorneys, have an "'overarching duty'" to "advanc[e] 'the undivided interests'" of their clients. *Id.* at ¶ 61, quoting *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 435, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988). But "[w]hen appellate counsel files an *Anders* brief saying, 'My

client should lose,' appellate counsel undoubtedly prejudices his or her client." *Sims* at ¶ 60 (Boyle, J., dissenting).

{¶ 34} Likewise, the following reasoning from my dissent in *Sims* is applicable to all situations where appointed counsel files an *Anders* brief and requests to withdraw from the case:

> Under *Anders*, the appellate court must complete an independent review of the record and then appoint counsel to argue that appeal if the court finds that a claim of arguable merit exists. This procedure places the court in the role of both advocate and adjudicator. In Ohio, how can a judge who has reviewed a record and identified issues of arguable merit then rule on the actual merits of the claims he or she previously identified without there being an appearance of impropriety, which is barred by the rules of judicial ethics? See Canon 1 of the Ohio Code of Judicial Conduct.

*Sims* at ¶ 62 (Boyle, J., dissenting), citing *State v. Upkins*, 154 Ohio St.3d 30, 2018-Ohio-1812, ¶ 10 (Fischer, J., dissenting).

{¶ 35} Accordingly, in line with my dissent in *Sims*, I would not accept the *Anders* brief in this case and would deny appointed counsel's motion to withdraw. I would also order both attorneys, mother's and CCDCFS's, to file briefs in the case (CCDCFS did not yet file one).