[Cite as *In re C.J.*, 2011-Ohio-3366.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
VINTON COUNTY

| | | |
|---|---|---|
| In the Matter of: | : | Case No. 10CA681 |
| C.J. | : | <u>DECISION AND</u> |
| S.J. | | <u>JUDGMENT ENTRY</u> |
| J.J. | : | **RELEASED 06/23/11** |

_____

<u>APPEARANCES</u>:

Sierra L. Meek, Nolan & Meek Co., L.P.A., Nelsonville, Ohio, for appellant.

William Safranek, Athens, Ohio, for appellee.

_____

Harsha, P.J.

**{¶1}** Theresa Bateman, legal custodian of the minor child S.J., appeals the decision of the juvenile court that granted Rosemary Campbell, the biological mother, supervised visitation with her child. Bateman argues that granting visitation was not in S.J.'s best interest, thus the court abused its discretion. Bateman contends that Campbell is an "unsuitable" mother, has had no meaningful contact with S.J. since she lost legal custody, abused marijuana in the past, and failed to maintain a stable residence.

**{¶2}** We perceive no abuse of discretion in the court's decision to grant supervised visitation and conclude that the court properly considered S.J.'s best interests. The trial court found that S.J. could benefit from re-establishing communication with her biological mother in a supervised visitation facility. Campbell's alleged "unsuitability" as a parent is a relevant concern in a decision granting custody, but would not preclude the court from granting her supervised visitation. Campbell's lack of contact with S.J., her past abuse of marijuana, and the stability of her residential

situation do not rise to such a level of concern that we would substitute our judgment for that of the trial court.

## II. Summary of the Case

{¶3}   In February 2007, the Vinton County Department of Job and Family Services (VCDJFS) filed complaints alleging the dependency of C.J., S.J., and J.J., Campbell's biological children.[1]  At the time, C.J. was five-years-old, S.J. was three-years-old, and J.J. was fifteen months.[2]  All three children have special needs and are "developmentally behind."  Their father is deceased.  The complaint alleged that Campbell's home had no running water, that it was dirty, that the children lacked clothing, and that they were often hungry.  The trial court issued an ex parte order granting custody of the children to VCDJFS.  The record also reflects that Vinton County charged Campbell with two counts of engaging in unlawful sexual relations with a minor on the same day the court granted the ex parte order.  The minor in question was not one of the children.  The Common Pleas Court, General Division later found Campbell guilty of a reduced charge of endangering children and sentenced her to six months in jail and a year of probation.   She successfully completed probation.

{¶4}   In March 2007, VCDJFS filed a case plan with the court, setting out certain goals so that Campbell could regain custody of her children.  In April 2007, the court found that the three children were dependent and ordered VCDJFS to retain their

---

[1] The record on appeal contains only VCDJFS' complaint alleging S.J.'s dependency.  The parties' briefs assert that VCDJFS filed similar complaints alleging J.J. and C.J.'s dependency.  Certain documents in the record, listing consecutively numbered juvenile court case numbers attached to each child, corroborate this assertion.  It is not clear whether the trial court consolidated the three cases.  However, this appeal only concerns an order affecting Campbell's visitation with S.J.
[2] The record is not consistent concerning the precise ages of the children.  However, this inconsistency has no impact on the issue before us.

custody. In a semi-annual administrative review, the court placed the children with their half-sister, Bateman, who resides in Columbus, Ohio.

{¶5} In December 2007, VCDJFS asked the court to grant Bateman legal custody of the children, citing Campbell's failure to achieve certain goals in the case plan. Along with this motion, Bateman signed and filed a "statement of understanding for legal custody," which specifically provided that Campbell retained "residual parenting rights" including the right to "reasonable visitation."

{¶6} In April 2008, the court awarded Bateman legal custody of the three children. Campbell did not appear at the hearing and the court did not address visitation.

{¶7} In June 2009, Campbell filed a motion for visitation with all three children. Later, she amended her request to visitation with S.J. only. The court held a final hearing in August 2010 where Campbell, Bateman, Campbell's probation officer, and the guardian ad litem assigned to the children all testified. Campbell testified that she wanted visitation with S.J. to let her know that she loved her and so that she could ask her what activities she was participating in. Campbell admitted that she smoked marijuana before May 2009 but claimed that she quit so that she could obtain visitation with her children. Campbell admitted that she had had no contact with her children since Bateman obtained custody and had only recently written them letters after she filed for visitation. Although Campbell admitted some difficulties controlling her children at an earlier visitation in 2007, she denied an allegation that she engaged in "inappropriate" conversation with C.J. at one of these visitations. A VCDJFS employee

alleged that Campbell told C.J. that his deceased father was not his "real" father. Bateman claimed to have heard this conversation as well.

{¶8}   A witness testified about a supervised visitation facility near Campbell's residence in Circleville called "Stepping Stones."  This testimony revealed that Stepping Stones provided an "extremely high" level of supervision, including video and audio monitoring.  The facility could also provide for an employee to be present in the room where the visitation occurred.  Campbell stated that she lived about ten minutes from the Stepping Stones facility and could arrange free transportation to get there. Although Bateman testified that it would be "hard" to schedule the 45-minute trip to Stepping Stones for visitation, she also stated that she complied with visitation arrangements with Campbell in 2007.

{¶9}   Bateman testified that visitation would confuse S.J. as well as her siblings when S.J. inevitably told them about meeting their mother.  Bateman also said that S.J. had no "recognition" of her mother.  The guardian-ad-litem likewise recommended no visitation because it would cause confusion.  But she testified that if the court decided to grant visitation, it should be supervised.

{¶10}  The trial court subsequently issued a written decision granting Campbell one two-hour period of supervised visitation a month with S.J. at Stepping Stones.  The court stated that it had some reservations about granting visitation, but felt that because S.J. was seven-years-old, there was still time left for Campbell and S.J. to "salvage" some sort of mother-daughter relationship.  Furthermore, the court felt assured of S.J.'s safety at these visitations given the level of monitoring present at Stepping Stones. Bateman then filed this appeal.

## II.  Assignments of Error

Bateman submits two assignments of error:

First Assignment of Error:

THE TRIAL COURT'S DECISION TO GRANT SUPERVISED VISITATION BETWEEN S.J. AND HER BIOLOGICAL MOTHER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

Second Assignment of Error:

THE TRIAL COURT'S DECISION TO GRANT VISITATION BETWEEN S.J. AND HER BIOLOGICAL MOTHER WAS NOT IN THE BEST INTERESTS OF THE CHILD.

## III.  Visitation

### A.  Standard of Review

**{¶11}**  We review the determination of parental rights to visitation for an abuse of discretion.  *In re Carpenter*, Washington App. No. 01CA26, 2002-Ohio-509, 2002 WL 185569, at *3.  The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable.  *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.  An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency."  *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 1993-Ohio-122, 614 N.E.2d 748.  When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.

**{¶12}**  With this deferential standard of review in mind, we observe that Bateman argues in her first assignment of error that the trial court's decision to grant visitation was against the "manifest weight of the evidence."  This is somewhat confusing as

Bateman does not seem to challenge any explicit factual findings of the court. For instance, Bateman argues that the trial court's earlier dependency finding implies that Campbell is an "unsuitable" mother. This seems to be a legal, as opposed to factual, argument, i.e., Campbell's purported legal status as an "unsuitable" mother should have precluded the court from granting her visitation rights as a matter of law. Bateman's second assignment of error – arguing that the trial court failed to apply the "best interest test" – appears to reflect the gist of the argument she presents in this appeal. Like her first assignment of error, Bateman argues that by losing custody of S.J., Campbell is an "unsuitable" mother. Therefore, she argues, granting Campbell visitation would be "detrimental" to S.J. Bateman also argues that visitation is not in S.J.'s best interest because Campbell has had no meaningful contact with her children, abused marijuana, and failed to maintain a stable home.

{¶13} Despite her framing of the issue, the question before us is whether the court abused its discretion in determining it was in S.J.'s best interest to grant Campbell visitation. See *In re Knisley* (May 26, 1998), Ross App. No. 97CA2316, 1998 WL 372703, at *2, 4.

### B. Visitation in the Context of a Dependency Action

{¶14} After a trial court has found a child to be "dependent," the court may make certain dispositions under R.C. 2151.353(A). The court applied R.C. 2151.353(A)(3), which permitted it to award legal custody of the child to Bateman, who filed a motion requesting custody prior to the dispositional hearing and signed a statement of understanding of the matters contained in R.C. 2151.353(A)(3)(a) - (d). In the statement of understanding, Bateman acknowledged that the "parents of the child have

*residual parental rights*, privileges, and responsibilities, *including*, but not limited to, *the privilege of reasonable visitation*[.]"  R.C. 2151.353(A)(3)(c) (Emphasis supplied).

**{¶15}**  There is no provision within R.C. Chapter 2151 addressing motions for visitation filed by a parent who has lost legal custody of a child after a finding of dependency.  See *Knisley*, supra, at *2 (observing that the statutory framework pertaining to dependency actions does not have an explicit provision governing visitation, unlike the general custody statute, which does.  See R.C. 3109.051(D).).  Thus, a court that chooses to modify a dispositional order to grant parental visitation following a finding of dependency must base that modification on the totality of circumstances as they relate to the child's best interest.  *Knisley* at id.  The court can, but is not required to, consider the factors listed in R.C. 3109.051(D). Id.

**{¶16}**  Here, the trial court based its decision to grant Campbell supervised visitation at Stepping Stones upon: 1) Campbell's desire to maintain a relationship with her daughter and the importance of the bond between a mother and child; 2) the likelihood that Bateman would facilitate the visitation; 3) the close geographic proximity between Bateman and S.J. (living in Columbus) and Campbell and Stepping Stones (located in Circleville); 4) S.J.'s age (seven), which indicated the possibility of "time to salvage some sort of mother and daughter" relationship; 4) the absence of any prior convictions for abuse or neglect involving Campbell and S.J.; and 5) the supervised visitation procedures used at Stepping Stones providing a "measure of safety" that satisfied the court.

**{¶17}**  We perceive no abuse of discretion in the trial court's decision to grant Campbell supervised visitation with S.J. for two hours a month.  Although the court

expressed reservations, it concluded that S.J. could receive some benefit from re-connecting with her biological mother in a controlled visitation environment. Noting Campbell's unfortunate past, the court observed that she had made some positive steps towards bettering herself in order to be in a position to have visitation with S.J.

{¶18} Nonetheless, Bateman argues that visitation with Campbell would be detrimental to S.J. because she alleges that Campbell is an "unsuitable" mother. "Unsuitability," however, is relevant to a parent's ability to manage the care of custody of her child. See generally, *In re B.P.*, 191 Ohio App.3d 518, 2010-Ohio-6458, 946 N.E.2d 818. Visitation and custody are related, but distinct concepts. *Knisley* at *3. This was not a child custody action. Campbell's lack of ability to manage the full custody and care of S.J. is one appropriate factor to consider in determining whether visitation is in the child's best interest. But her alleged "unsuitability" as a parent would not be a per se bar from awarding visitation.

{¶19} Bateman additionally argues that visitation is not in S.J.'s best interest because of Campbell's lack of contact with her children, past addiction to marijuana, and inability to maintain a "stable" residence. Some of these facts are relevant concerns and might indicate that visitation is not in S.J.'s best interest. These facts, however, do not rise to such a level of concern that we find ourselves concluding no reasonable decision maker could discount them in exercising its discretion. Campbell's lack of contact with her children over the past years is unfortunate. But it does not indicate that re-establishing communication through visitation would be against S.J.'s best interests. As to the marijuana use, Campbell testified that she stopped smoking marijuana specifically so that she could obtain visitation with her children. Thus, the

former marijuana use, while a concern, also fails to establish that no reasonable court could grant visitation. Finally, we fail to see how the "stability" of Campbell's residential situation would evidence harm befalling S.J. in a supervised visitation center.

{¶20} The record in this case reflects that the trial court examined the totality of the circumstances, thoughtfully exercised its discretion, and ordered a short period of monthly-supervised visitation with the best interest of S.J. in mind. This is not one of those cases where the court acted unreasonably, unconscionably, or arbitrarily. Consequently, we find no merit in Bateman's first and second assignments of error and affirm the decision of the trial court.

JUDGMENT AFFIRMED

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Vinton County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Kline, J. & McFarland, J.:  Concur in Judgment and Opinion.


For the Court


BY:  _____
        William H. Harsha, Presiding Judge



### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**