[Cite as *In re G.M.*, 2011-Ohio-4090.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 95410

---

IN RE:   G.M.

Minor Child

[APPEAL BY GRANDMOTHER, P.C.M.]

---

JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD 08935487

BEFORE:     Stewart, P.J., Celebrezze, J., and Rocco, J.

RELEASED AND JOURNALIZED:   August 18, 2011

## ATTORNEY FOR APPELLANT GRANDMOTHER

Jeffrey R. Froude
P.O. Box 761
Wickliffe, OH    44092-0761


## ATTORNEY FOR APPELLEES A.M., ET AL., FOSTER PARENTS

Mark Witt
6209 Barton Road
North Olmsted, OH    44070-3856


## ATTORNEYS FOR APPELLEE CUYAHOGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES

William D. Mason
Cuyahoga County Prosecutor

BY:   Gina S. Lowe
Assistant County Prosecutor
Cuyahoga County Department of Children
        and Family Services
4261 Fulton Parkway
Cleveland, OH    44144


## GUARDIAN AD LITEM FOR CHILD

Russell Ezolt
26341 Strawberry Lane
Westlake, OH    44145

MELODY J. STEWART, P.J.:

**{¶ 1}** Appellant, P.C.M., the maternal grandmother to a now four-year-old child, G.M., appeals from a juvenile division order that granted legal custody of the child to foster parents, J.M. and A.M. The grandmother complains that the court lacked jurisdiction to hear the case, that the child's guardian ad litem had no authority to file a motion on behalf of the foster parents, and the court's judgment is against the manifest weight of the evidence.[1]

I

**{¶ 2}** The child was born to a teenage mother in California in November 2006. His paternity has not been established. The child and mother lived with the grandmother, but the grandmother's full-time pursuit of a nursing degree meant that various family members helped raise him. In February 2008, the grandmother moved from California to Georgia and brought the child with her. The mother stayed behind in California and would occasionally visit in Georgia. At times, the mother took the child to

---

[1] During oral argument, the guardian ad litem suggested that we lacked jurisdiction to hear this appeal because the court did not establish a visitation schedule, instead deferring that matter for a later hearing. We disagree. Unlike permanent custody cases that require both an adjudicatory and dispositional order for finality, see *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, 900 N.E.2d 607, ¶8, "[t]here is no provision within R.C. Chapter 2151 addressing motions for visitation filed by a parent who has lost legal custody of a child after a finding of dependency." *In re C.J.*, 4th Dist. No. 10CA681, 2011-Ohio-3366, ¶15. Visitation is thus ancillary to legal custody and has no effect on the finality of a legal custody order.

Ohio to visit with his maternal grandfather, M.M. By April 2008, the grandmother was devoting so many hours to advancing her nursing career that she arranged for some friends in Ohio to foster the child. The foster parents apparently understood this arrangement to be a prelude to their adopting the child. In June 2008, the child required medical attention, but the foster parents were unable to have the child treated because they had no legal authority over the child. The Cuyahoga County Department of Children and Family Services ("agency") filed an emergency motion for temporary custody of the child so that the child could obtain medical treatment. The court appointed a guardian ad litem for the child, granted the agency's motion for emergency custody, and placed him with the foster parents.

{¶ 3} In June 2009, the agency filed a motion asking the court to award legal custody of the child to the grandmother. The child's guardian ad litem objected and filed his own motion asking the court to award legal custody of the child to the foster parents. The paternal grandfather then filed his own motion for legal custody. The parties later reached an interim agreement on visitation and withdrew their respective motions, and the court continued the child in the temporary custody of the foster parents.

{¶ 4} The agreement between the parties unraveled, however, when the agency filed an amended case plan in which it stated a goal to return the

child to the grandmother. The child's guardian ad litem objected and filed a new motion asking the court to grant legal custody to the foster parents. The agency filed a new motion asking the court to grant legal custody to the grandmother, and the grandfather filed a new motion seeking legal custody for himself. The court conducted a hearing on the motions and found that it would be in the child's best interests to have legal custody placed with the foster parents.

## II

{¶ 5} The grandmother first argues that the court lacked jurisdiction to hear the matter under the Interstate Compact on the Placement of Children ("ICPC") because the child had spent less than six months in the state of Ohio at the time motions for legal custody were filed. She argues that only the California or Georgia courts could rule on the custody motions.

{¶ 6} The ICPC is a contract among member states and U.S. territories authorizing them to work together to ensure that children who are placed across state lines for foster care or adoption receive adequate protection and support services. See R.C. 5103.20, Article I, Section (A)-(C). This is accomplished by ensuring that if a child is moved across state lines, that child's rights are protected as if they were in their home state and all legal requirements are observed. The compact characterizes states as either "sending" or "receiving." The sending agency/state is a member state that

sends, brings, or causes to be sent or brought any child to another member state. Id. at Article II, Section (T). The receiving state is the state to which the child is sent, brought, or caused to be sent or brought for placement with state or local public authorities, or for placement with private agencies or persons. Id. at Article II, Section (P). The ICPC states that jurisdiction is vested in the sending state "over a child with respect to all matters of custody and disposition of the child which it would have had if the child had remained in the sending state. Such jurisdiction shall also include the power to order the return of the child to the sending state." Id. at Article IV, Section (A).

{¶ 7} The ICPC applies only if a state had previously exerted some form of jurisdiction over a child. The record does not show that any other state agency had exerted jurisdiction over the child before he was moved to Ohio. It appears that the first time a state agency became involved occurred when the agency sought temporary custody of the child in order to allow the foster parents to obtain medical treatment for him. The ICPC thus had no application to this case, and the court properly exercised jurisdiction to decide who should have legal custody of the child.

III

{¶ 8} The grandmother next argues that the child's guardian ad litem lacked authority to file a motion for legal custody on behalf of the foster parents. She maintains that the guardian ad litem could only file a motion

for custody in his own name, not in the name of another person, and in any event had to file a statement of understanding as required by R.C. 2151.353(A)(3).

{¶ 9} A child's guardian ad litem is required to "perform whatever functions are necessary to protect the best interests of the child *** and shall file *any* motions and other court papers that are in the best interests of the child." R.C. 2151.281(I) (emphasis added). Thus, "[a] guardian ad litem has authority under R.C. 2151.281(I) and 2151.415(F) to file and prosecute a motion to terminate parental rights and award permanent custody in a child welfare case." *In re C.T.*, 119 Ohio St.3d 494, 2008-Ohio-4570, 895 N.E.2d 527. It follows that the guardian ad litem could, in this case, file and prosecute a motion seeking to award legal custody of the child.

{¶ 10} It is true that the guardian ad litem did not, concurrent with the filing of his motion to award legal custody of the child to the foster parents, file the foster parents' statement of understanding as required by R.C. 2151.353(A)(3).[2] A person proposed as a legal custodian of a child "shall be

---

[2]A "statement of understanding" expresses, among other things, the intent of a person to become the legal custodian of the child; that the person is able to assume legal responsibility for the care and supervision of the child; that the person understands that legal custody of the child in question is intended to be permanent in nature and that the person will be responsible as the custodian for the child until the child reaches the age of majority; and that the parents of the child have residual parental rights, privileges, and responsibilities, including, but not limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support. See R.C. 2151.353(A)(3)(a)-(d).

awarded legal custody of the child only if the person identified signs a statement of understanding for legal custody ***." Id. Apart from stating that the court cannot award legal custody to a party that has not filed a statement of understanding, the statute does not give any specific time frame in which the statement of understanding must be filed. The failure to file the statement at the time of the motion for legal custody thus cannot be considered a jurisdictional defect — the failure to file only affects the court's ability to award legal custody.

{¶ 11} On the final day of the hearing, May 11, 2010, the grandmother, grandfather, and the agency made an oral motion to dismiss the guardian ad litem's motion to award legal custody to the foster parents on grounds that the foster parents had not filed a statement of understanding. The court agreed that the statement should have been filed earlier but also noted that "it's something that should have been caught earlier" by a magistrate or the parties. It orally denied the motion to dismiss, instructed the foster parents to file the statement by the following day, and stated its intent to grant legal custody to the foster parents. The foster parents filed their statement of understanding on May 12, 2010; the court issued the journal entry granting legal custody on June 12, 2010. Since the court speaks only through its journal, *Gaskins v. Shiplevy* (1996), 76 Ohio St.3d 380, 382, 667 N.E.2d 1194,

there is no question that the court did not grant legal custody until after the statement of understanding had been filed.

{¶ 12} Although we find no jurisdictional impediment exists in this case, prudence would suggest that a statement of understanding be filed as a part of a motion for legal custody. But in a case like this, where the foster parents essentially testified to all that would have been contained in the statement of understanding, the court could, before issuing a journal entry awarding legal custody, ask the foster parents to rectify an obvious oversight in order to achieve full compliance with R.C. 2151.353(A)(3).

IV

{¶ 13} For her final argument, the grandmother argues that the court's decision to award legal custody to the foster parents is against the manifest weight of the evidence. Claiming that there "is a fairly even division of positives and negatives for the child regardless of who gets custody," she maintains that the court should have been guided by the statutory presumption that the child be placed with a suitable member of his extended family — a presumption that would have tipped the scales in her favor.

A

{¶ 14} After a child is adjudicated abused, neglected, or dependent, the court may award legal custody to a non-parent after finding that legal custody is in the child's best interests. R.C. 2151.353(A)(3); R.C.

2151.415(B). Legal custody is significantly different than the termination of parental rights — despite losing legal custody of a child, the parents of the child retain residual parental rights, privileges, and responsibilities. R.C. 2151.353(A)(3)(c). For this reason, we apply the less restrictive "preponderance of the evidence" standard of appellate review to the court's factual findings. *In re S.E.*, 8th Dist. No. 96031, 2011-Ohio-2042, ¶14, citing *In re Nice*, 141 Ohio App.3d 445, 455, 2001-Ohio-3214, 751 N.E.2d 552. However, when considering the court's ultimate decision on whether the facts as determined would make it in the child's best interests to be placed in legal custody, we apply the abuse of discretion standard. *In re B.H.*, 8th Dist. No. 95794, 2010-Ohio-1967, ¶10.

{¶ 15} Unlike R.C. 2151.414(D), which sets forth specific factors that the court must consider before terminating parental rights and granting permanent custody, R.C. 2151.353(A)(3) does not independently set forth factors that the court should consider for determining the child's best interests in a request for legal custody. Some appellate decisions suggest that the trial courts apply the best interests factors set forth in R.C. 2151.414(D), the permanent custody statute. See, e.g., *In re S.N.*, 9th Dist. No. 23571, 2007-Ohio-2196, at ¶27; *In re Eicher Children*, 1st Dist. Nos. C-080107 and C-080121, 2008-Ohio-2196, ¶15; *In re Burnette*, 5th Dist. No. 2007CA00076, 2007-Ohio-6269, ¶29. Other appellate courts, including this

district, have suggested that the trial court consider the best interests factors set forth in R.C. 3109.04(F). See, e.g., *In re J.O.*, 8th Dist. No. 87626, 2010-Ohio-407, ¶11; *In re Fulton*, 12th Dist. No. CA2002-09-236, 2003-Ohio-5984.

**{¶ 16}** The differences in the best interests factors are of no great consequence, however, because the different statutes are merely instructive on the question of a child's best interests. *In re Pryor* (1993), 86 Ohio App.3d 327, 335, 620 N.E.2d 973. Rules of statutory construction state that it is generally presumed that the General Assembly acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another. *State v. Vanderbilt* (1882), 37 Ohio St. 590, 609. By failing to set forth in R.C. 2151.353(A)(3) factors that the court must consider when it had specifically done so in other statutes, we must presume that the legislature did not intend to require the consideration of certain factors as a predicate for granting legal custody. Of course, the courts are free to consider any factors that they deem appropriate, including various statutory formulations of a child's best interests, but consideration of other statutes is not mandatory.

## B

**{¶ 17}** In oral remarks made at the conclusion of the hearing, the court stated that the case was one of the most difficult it had ever had because "we

rarely have cases where we have this many good people arguing over a child."

The court acknowledged that the law prefers placement of a child with relatives, and that it considered family placements as the preferred course of action if it could be done. However, the court found that removing the child from the foster parents would not be in his best interests.

{¶ 18} Contrary to the grandmother's assertions, the preference for a family placement as expressed in R.C. 2151.412(G)(2) is not mandatory. That section states that when, as here, neither parent is capable of supporting the child or providing for its best interests, "the child should be placed in the legal custody of a suitable member of the child's extended family." The courts have held that this language is precatory, not mandatory. See *In re Leverett* (Mar. 26, 1998), 8th Dist. Nos. 71357-71360; *In re A.E.*, Franklin App. Nos. 07AP685 and 07AP-748, 2008-Ohio-1375, at ¶35; *In re Hiatt* (1993), 86 Ohio App.3d 716, 722, 621 N.E.2d 1222. So to the extent the court found that all parties arguing for custody would have made for a good placement, it was not bound by the statute to favor the grandmother.

{¶ 19} As noted, the court acknowledged the statutory preference that a child be placed with relatives when possible, but ultimately concluded that it was more important that the child have a "good steady home[.]" It found that the child has spent the previous two, formative years with the foster

parents, whom he had come to see as his parents. The court found that "I can't see removing him, or how removing him from that situation would be in his best interests."

{¶ 20} The abuse of discretion standard requires us to affirm a discretionary ruling by the court unless that ruling is arbitrary, unreasonable, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144. The grandmother concedes that the foster parents were suitable for legal custody. She acknowledges that the child had spent the last half of his life with the foster parents, that they loved the child, were raising him in a devoutly religious home, and more than adequately provided for him. And she does not deny that the parties stood in relative balance for purposes of which of them could serve the child's best interests as legal custodians. With these factors present, we necessarily cannot conclude that the court abused its discretion by finding that an award of legal custody to the foster parents would be in the child's best interests.

Judgment affirmed.

It is ordered that appellees recover of appellant their costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas – Juvenile Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.


_____
MELODY J. STEWART, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
KENNETH A. ROCCO, J., CONCUR