[Cite as *In re S.D.T.*, 2021-Ohio-2106.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

IN RE S.D.T.

A Minor Child

[Appeal by S.S., Mother]

:
:
:
:
:
:

No. 109996

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 24, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-19905673

---

### *Appearances:*

The Law Office of R. Tadd Pinkston, L.L.C., and R. Tadd
Pinkston, *for appellant.*

William Daugherty Law, L.L.C., and William Daugherty,
for *appellee* D.T.

MARY EILEEN KILBANE, J.:

{¶ 1} Appellant S.S. ("Mother") appeals from the juvenile court's decision awarding legal custody of her minor child, S.D.T., to appellee D.T. ("Father"). For the following reasons, we affirm the decision of the trial court.

**Factual and Procedural History**

{¶ 2} On May 9, 2019, the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency") filed a complaint alleging that minor children S.D.T., then nine years old, and C.N., then 18 months, were abused and neglected and seeking temporary custody of the children.[1] The agency simultaneously filed a motion for emergency predispositional custody of the children. The complaint alleged that both children were observed with various injuries and Mother was unable to provide an explanation for the injuries. Specifically, the complaint alleged that S.D.T. had multiple lacerations to her face, back, arms, neck, and head, and that at least two of these injuries should have been treated with stitches but were not. Therefore, the complaint alleged that Mother failed to meet S.D.T.'s medical needs by ensuring that her injuries were properly treated. The complaint also alleged that Mother failed to meet S.D.T.'s educational needs because S.D.T. missed an excessive amount of school and was ultimately withdrawn from school. Additionally, the complaint alleged that Mother failed to

---

[1] Father D.T. is not the biological father of C.N. The trial court in this case granted the agency's motion for an extension of temporary custody of C.N. and Mother did not appeal this decision. Father did not receive legal custody of C.N.; therefore, C.N. is not the subject of this appeal.

consistently seek treatment for her depression and bipolar disorder, which seriously impacted her ability to care for her children.

{¶ 3} With respect to Father, the complaint alleged that he had failed to support, visit, or communicate with S.D.T. consistently. At the time the complaint was filed, Father had not seen S.D.T. in approximately seven years.

{¶ 4} On May 8, 2019, the children were placed in temporary custody of the agency. On July 9, 2019, Father filed a motion for legal custody of S.D.T. On July 17, 2019, the court adjudicated S.D.T. abused and neglected.

{¶ 5} On July 22, 2019, the court held a hearing in which the agency stated that it was "open-minded in regards to [Father]," but it was waiting for the results of a pending out-of-town investigation ("OTI") because Father lived in Atlanta, Georgia. The social worker assigned to the case explained that Mother's case plan services related to substance abuse, mental health, and parenting. There were no case plan goals or services for Father, and the social worker testified that should any case plan goals be added for Father, it would be limited to continuing to foster a relationship with S.D.T. The social worker testified that Father came to Cleveland when the agency first initiated this case, and that was the first time that he had seen or communicated with S.D.T. and Mother since they relocated to Ohio from Georgia approximately seven years before. The record reflects that this lack of communication was not due to Father's lack of commitment. When Mother left Georgia with S.D.T., Father did not know the child's whereabouts and was not allowed access to S.D.T. The social worker also testified that although Father lived

in Georgia, he had regular phone contact with S.D.T. and had made multiple trips to Cleveland to visit S.D.T. since the start of this case. At the time of the hearing, the permanency plan was for both children to be reunited with Mother. Following the hearing, the court awarded temporary custody of S.D.T. to the agency.

{¶ 6} On March 19, 2020, the agency filed a motion for an extension of temporary custody. On May 12, 2020, Mother filed a motion for legal custody of both children. On May 19, 2020, the court had a hearing on these motions. At this hearing, the child protection specialist newly assigned to the case testified that since being assigned to this case in April 2020, she had been unable to review the case file kept by the social worker previously assigned to the case, partly due to the COVID-19 pandemic. This witness went on to testify that she understood that Mother had completed her case plan services and had begun to have overnight visits with her children. When Father's counsel cross-examined this witness, she could not respond to questions as to why S.D.T. could not be placed with Father and she testified that she had not had any contact with Father since being assigned to this case.

{¶ 7} During one of the overnight visits between Mother and S.D.T., the agency learned that Mother's paramour was present in the home with the children, despite Mother making inconsistent claims that the individual was a relative or a coworker. According to the agency, this was alarming because the agency had reason to believe that this individual was involved in S.D.T.'s injuries that prompted the agency's involvement with the family. This individual was listed on S.D.T.'s

intake referral form at the hospital when she was ultimately treated for her injuries, and according to the agency, this individual and Mother provided inconsistent explanations as to how S.D.T. was injured. Further, although this individual may have been living with Mother, because of inconsistent information received about the individual's relationship to Mother, the agency was unable to fully investigate this individual. Ultimately, the agency believed that this individual might pose a safety risk to the children.

{¶ 8} The agency's supervising social worker testified that following Father's out-of-town investigation, an Interstate Compact on the Placement of Children ("ICPC") was completed and denied in February 2020, due to concerns relating to Father's girlfriend, with whom he lived. This witness testified that beyond these concerns regarding Father's girlfriend, the agency did not have other concerns regarding Father. Further, the witness testified that because the OTI was denied based on an incident from seven years ago that appears to have been resolved, it was unclear what, if anything, Father could do moving forward to remedy the issue that caused the ICPC to be denied.

{¶ 9} In the middle of the supervising social worker's testimony, the court interrupted the testimony as follows:

> THE COURT: You know what, I'm going to interrupt here. And my apologies to everyone. I am very concerned about the fact that neither — from the agency, neither person seems to have the file or know what's going on and I'm being asked to make a dispositive placement of one of these children and it would seem that with all due respect, to [the agency witnesses], neither one of them is well versed in this case.

So I'm going to recess this hearing right now. And I would like at least one of the witnesses to review the file and the facts and the report because this is concerning. And I've sat and listened for over an hour and I've gotten "I don't know," "I'm not sure," "to the best of my knowledge." We're talking about two very young children. Okay.

The court adjourned to allow the witnesses to review the case file and better prepare for a subsequent dispositional hearing on May 28, 2020.

{¶ 10} On May 21, 2020, Father filed a second motion for legal custody of S.D.T. On May 28, 2020, the court held the subsequent dispositional hearing on all of the pending motions. At this hearing, agency witnesses testified that Mother had completed her substance abuse case plan services in January 2020, had completed random drug screens that came back negative as recently as May 21, 2020, and had completed her domestic violence case plan services in August 2019. With respect to her mental health plan case services, the witnesses testified that Mother was initially engaged with the recommended counseling services pursuant to her case plan, but in recent months had stopped counseling but continued to be medication compliant.

{¶ 11} The witnesses also testified regarding the ICPC denial and explained that Father's girlfriend had been involved with child protective services in Georgia in 2013 due to testing positive for marijuana. They went on to testify that based on the ICPC, they had no concerns that Father would be unable to provide for S.D.T.'s basic needs or would otherwise be unsuitable. Father had undergone a drug screen as part of the ICPC, and those results were negative. The witnesses testified that S.D.T. was "very receptive" to seeing and visiting with Father, and that he had shown continued commitment reestablishing a connection with her.

**{¶ 12}** The guardian ad litem recommended that legal custody of S.D.T. be awarded to Father because he was "ready, willing, and able" to parent S.D.T. and the agency had no outstanding concerns or case plan services for him to complete.

**{¶ 13}** The magistrate denied Mother's motion for legal custody and granted Father's motion for legal custody of S.D.T. Mother objected to the magistrate's decision, and the trial court overruled Mother's objections and adopted the magistrate's decision. The court made the following findings:

> The continued extension of temporary custody of the child is not in the child's best interest.
>
> The Court further finds that the Cuyahoga County Division of Children and Family Services has made reasonable efforts and continues to make reasonable efforts to make it possible for the child to safely return home through the provision of supportive services.
>
> The Cuyahoga County Division of Children and Family Services has made reasonable efforts to finalize the permanency plan for the child. These efforts are mother was referred to Murtis Taylor to address her mental health. Mother is diagnosed with Bipolar and depression. Mother is medication compliant but needs to re-engage with counseling. Mother completed a substance abuse assessment through Key Solutions and random drugs screens have been negative. Mother completed domestic violence services at the Domestic Violence and Child Advocacy Center. Father has re-established a relationship with his child, maintaining phone/face time contact and driving up from Georgia to visit the child. Father cooperated with the out of [town] investigation of his home in Georgia. There were no identified services for father to complete in the case plan.
>
> GAL recommends that the child be placed in the legal custody of the father [D.T.]. GAL cites to father's demonstrated dedication and commitment to his child, always standing ready and being willing and able to care for her. GAL reports father drove through the night to get to Cleveland for the emergency hearing held at the inception of this case. GAL further advised the Court that father had a relationship with his child until the mother moved from Georgia to Cleveland. GAL does

not view the 7 year old, resolved marijuana issue of father's paramour as a barrier to placement with the father.

ICPC letter of denial dated February 6, 2020 is marked as Exhibit A and admitted without objection.

Review of Exhibit A reveals that father and paramour are both employed, their home is appropriate and they can meet the basic needs of their family. Further there has not been any children services involvement with father or his paramour since 2013.

Mother now appeals, presenting one assignment of error for our review.

**Law and Analysis**

{¶ 14} In Mother's sole assignment of error, she argues that the trial court's decision to affirm legal custody to father was against the manifest weight of the evidence and an abuse of discretion. Specifically, Mother argues that the manifest weight of the evidence did not support granting Father legal custody of S.D.T. and that the trial court abused its discretion in overruling her objections and adopting the magistrate's decision.

{¶ 15} R.C. 2151.353(A) provides that after a child has been adjudicated abused, neglected, or dependent, the trial court may

[a]ward legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings.

R.C. 2151.353(A)(3). Legal custody is

a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and

medical care, all subject to any residual parental rights, privileges, and responsibilities.

R.C. 2151.011(B)(21).

**{¶ 16}** Unlike an award of permanent custody, an award of legal custody does not divest parents of residual parental rights and responsibilities, nor does an award of legal custody permanently foreclose the right of either parent to regain custody in accordance with the law. *In re R.B.*, 2019-Ohio-1656, 136 N.E.3d 42, ¶ 48 (8th Dist.), citing *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 23; *see also* R.C. 2151.42.

**{¶ 17}** Because legal custody, where parental rights are not terminated, is not as drastic a remedy as permanent custody, the trial court's standard of review in a legal custody proceeding is not clear and convincing evidence, but "merely preponderance of the evidence." *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7, citing *In re D.P.*, 10th Dist. Franklin No. 05AP-117, 2005-Ohio-5097, ¶ 52. The court must determine the appropriateness of legal custody in accordance with the best interest of the child as supported by a preponderance of the evidence presented at the dispositional hearing. *In re R.B.*, 2019-Ohio-1656, 136 N.E.3d 42, ¶ 48 (8th Dist.), citing *In re T.R.*, 8th Dist. Cuyahoga No. 102701, 2015-Ohio-4177, ¶ 44. A "preponderance of the evidence" is "evidence that's more probable, more persuasive, or of greater probative value." *In re D.P.* at ¶ 52, quoting *State v. Finkes*, 10th Dist. Franklin No. 01AP-310, 2002 Ohio App. LEXIS 1422 (Mar. 28, 2002).

{¶ 18} Because the decision whether to grant or deny a request for legal custody is within the sound discretion of the juvenile court, we apply an abuse of discretion standard when reviewing a juvenile court's ultimate decision on legal custody. *In re A.C.*, 8th Dist. Cuyahoga No. 108442, 2019-Ohio-5127, ¶ 16, citing *In re W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604, ¶ 2, quoting *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 14. We likewise review a trial court's decision to adopt a magistrate's decision for abuse of discretion. *Id.*, citing *In re D.G.B.*, 8th Dist. Cuyahoga No. 107921, 2019-Ohio-3571, ¶ 24. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 19} Apart from the requirement that the child be previously adjudicated as abused, neglected, or dependent — which no party disputes was satisfied in this case — the court's authority to award legal custody under R.C. 2151.353(A)(3) is limited only by the best interests of the child. *In re W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604, ¶ 3. While there is "no 'specific test or set of criteria' that must be applied or considered in determining what is in a child's best interest in a legal custody case[,]" the factors in R.C. 2151.414(D) are instructive. *In re I.L.*, 8th Dist. Cuyahoga No. 109034, 2020-Ohio-2946, ¶ 30; *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 16. The statutory factors include (a) the interaction and interrelationship of the child with their parents and other relatives or

caregivers; (b) the child's wishes; (c) the child's custodial history; and (d) the child's need for a legally secure placement. R.C. 2151.414(D).

**{¶ 20}** Here, the trial court reviewed the record, the magistrate's decision, and Mother's objections to the magistrate's decision and ultimately overruled the objections and adopted the decision. Mother simultaneously argues that the magistrate's decision in this case is unsupported by the evidence and, while "broadly correct," omits several crucial facts. Specifically, Mother emphasizes that S.D.T. has a strong bond with Mother, her half-brother, and other family in Ohio, and by contrast, the "scattershot" nature of Father's relationship with S.D.T. weighs against uprooting S.D.T. from her life in Ohio.

**{¶ 21}** The lower court heard evidence as to S.D.T.'s bond with her family in Ohio, as well as testimony from agency witnesses that ideally, S.D.T. and her half-sibling would not be separated. The court also heard evidence, though, as to S.D.T.'s positive relationship with her Father. Further, while it is not explicitly clear from the record, it appears that the "scattershot" nature of Father's relationship with S.D.T. for seven years is largely, if not exclusively, due to Mother's decision to relocate to Ohio and Father's lack of information about their whereabouts. Indeed, the record in this case demonstrates that as soon as Father was notified about the initiation of these proceedings, and thus S.D.T.'s whereabouts, he drove from Georgia to Ohio. From the inception of the case, Father made multiple trips to Ohio to visit S.D.T., had regular phone and video contact with her, and has provided her with clothing and satisfied other material needs even while she was in a foster care

placement. Beyond this evidence demonstrating Father's commitment to S.D.T., the court also heard evidence that S.D.T. was receptive to Father and had a positive relationship with him.

{¶ 22} We acknowledge, as the lower court did, that Mother substantially complied with her case plan and completed a domestic violence program in addition to other case plan services. This substantial compliance, however, does not change the fact that Mother had stopped engaging in mental health counseling, a required action of her case plan. Further, our review of the record shows that at the time of the trial in this case, there was an unresolved issue regarding Mother's paramour. The agency was unable to determine whether an individual who was present with Mother during multiple overnight visits with the children was a suitable person to interact with, and potentially supervise, the children. Moreover, Mother was not cooperative with the agency or even straightforward in identifying this person, and ultimately told an agency employee that she "knew she had made a mistake." In light of the connection Mother's paramour had to the injuries sustained by S.D.T., and the suspected history of abuse, this unresolved issue weighed heavily against granting Mother's motion for legal custody and weighed in favor of granting Father's motion for legal custody.

{¶ 23} Ultimately, Mother does not point to any findings that are unsupported by evidence in the record, nor does Mother direct our attention to any way in which the trial court's decision was unreasonable, arbitrary, or unconscionable. Therefore, the decision to grant Father's motion for legal custody

of S.D.T. was supported by a preponderance of the evidence and was not an abuse of discretion. Accordingly, we overrule Mother's sole assignment of error.

{¶ 24} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

SEAN C. GALLAGHER, P.J., and
LISA B. FORBES, J., CONCUR