[Cite as *In re Che.A*, 2023-Ohio-4546.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE CHE.A., ET AL.                     :

Minor Children                           :                    No. 112893

[Appeal by Mother]                       :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 14, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD21902687, AD21902688, and AD22901924

---

*Appearances:*

Edward F. Borkowski, Jr., *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Appellant-mother ("Mother") appeals from the juvenile court's judgments granting legal custody of her minor children, Che.A. and Cha.A., to their maternal step-grandmother, and legal custody of her minor child Cl.A. to a maternal aunt. For the reasons that follow, we affirm.

## I. Background

{¶ 2} In April 2021, the Cuyahoga County Division of Children and Family Services ("CCDCFS" or the "agency") filed a complaint alleging that Che.A. and Cha.A. were abused, with a dispositional request of temporary custody to the agency. In March 2022, after an adjudicatory hearing, the trial court found the children to be dependent and ordered them placed in the temporary custody of CCDCFS. Mother did not appeal these decisions.

{¶ 3} While the cases involving Che.A. and Cha.A. were pending, Mother gave birth to Cl.A., and in February 2022, CCDCFS filed a complaint alleging that Cl.A. was dependent and requesting a disposition of temporary custody to the agency. In September 2022, after a hearing, the trial court adjudicated Cl.A. as a dependent child and ordered her to be placed in the temporary custody of CCDCFS.

{¶ 4} Thereafter, the agency filed motions to modify temporary custody to legal custody to relatives for all three children.[1] In March 2023, the magistrate held a hearing on the motions, after which she issued decisions recommending that the children be placed in the legal custody of the relatives identified in the agency's motions. The trial court subsequently overruled Mother's objections to these decisions and ordered the children placed in the legal custody of relatives. Mother now appeals.

---

[1] The agency requested that legal custody of Che.A. and Cha.A. be granted to the maternal step-grandmother, and legal custody of Cl.A. be granted to a maternal aunt. Che.A. and Cha.A. were placed with the step-grandmother throughout the pendency of their cases. Cl.A. was placed with the aunt upon her birth in February 2022.

## II. Law and Analysis

### A. Adjudicatory Orders

{¶ 5} In her first assignment of error, Mother contends that the trial court abused its discretion by adjudicating the children dependent. This court lacks jurisdiction to consider this assignment of error.

{¶ 6} The trial court's journal entry adjudicating Che.A. and Cha.A. dependent was journalized in December 2021, and its order adjudicating Cl.A. dependent was journalized in May 2022. These entries of adjudication were followed by dispositional orders granting temporary custody to the agency for Che.A. and Cha.A. on March 21, 2022, and a dispositional order of temporary custody to the agency for Cl.A. entered on September 2, 2022.

{¶ 7} "An appeal of an adjudication order of abuse, dependency, or neglect and the award of temporary custody pursuant to R.C. 2151.353(A)(2) must be filed within 30 days of the judgment entry pursuant to App.R. 4(A)." *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, 900 N.E.2d 607, syllabus. *See also In re D.T.*, 9th Dist. Lorain No. 13CA010451, ¶ 18 (a juvenile court's adjudication of a child as dependent or neglected followed by a disposition awarding temporary custody to a public children's agency is a final appealable order). Mother did not appeal the dispositional orders within 30 days of the judgment entries and, therefore, has waived any right to challenge them on appeal. Specifically, she cannot now raise issues relating to those orders in an appeal from a subsequent order. The first assignment of error is overruled.

### B. Denial of Mother's Motion for Legal Custody

{¶ 8} In her third assignment of error, Mother contends that the trial court abused its discretion in denying her motion for legal custody of Che.A. and Cha.A. We are likewise without jurisdiction to consider this assignment of error.

{¶ 9} Mother filed her motion for legal custody of Che.A. and Cha.A. in July 2021, prior to the dispositional hearing. Following the dispositional hearing on February 24, 2022, the trial court issued a journal entry dated March 21, 2022, in which it denied Mother's motion for legal custody and ordered the children to be placed in the temporary custody of the agency. Mother did not appeal from these orders, nor did she ever file another motion for legal custody.

{¶ 10} As noted earlier, pursuant to App.R. 4(A), an appeal from an award of temporary custody must be filed within 30 days of the judgment entry. *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, 900 N.E.2d 607, at *id*. Because Mother did not timely appeal the order of disposition awarding temporary custody to the agency and denying her motion for legal custody, she has waived the right to challenge the order on appeal and cannot now raise issues related to that order in an appeal from a subsequent order. The third assignment of error is therefore overruled.

### C. The Manifest Weight of the Evidence

{¶ 11} In her second assignment of error, Mother contends that the trial court's decision awarding legal custody of the children to relatives was against the manifest weight of the evidence.

{¶ 12} A trial court enjoys broad discretion in custody proceedings because "custody issues are some of the most difficult and agonizing decisions a trial judge must make." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). Thus, on appeal, a trial court's custody determination will not be disturbed unless the court abused that discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). "'Abuse of discretion' is a term of art, describing a judgment neither comporting with the record, nor reason." *Klayman v. Luck*, 8th Dist. Cuyahoga Nos. 97074 and 97075, 2012-Ohio-3354, ¶ 12, citing *State v. Ferranto*, 112 Ohio St. 667, 676-677, 148 N.E. 362 (1925). "'A decision is unreasonable if there is no sound reasoning process that would support that decision.'" *Klayman* at *id.*, quoting *AAAA Ent. Inc. v. River Place Comm. Urban Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 13} Legal custody is defined by R.C. 2151.011(B)(21) as follows:

> [A] legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.

{¶ 14} Legal custody is significantly different from the termination of parental rights — despite losing legal custody of a child, the parents of the child retain residual parental rights, privileges, and responsibilities. R.C. 2151.353(A)(3)(c). For this reason, "'when a juvenile court awards legal custody following an adjudication of abuse, neglect, or dependency, it does so by examining

what would be in the best interest of the child based on the preponderance of the evidence.'" *In re A.C.*, 8th Dist. Cuyahoga No. 108442, 2019-Ohio-5127, ¶ 15, quoting *In re T.R.*, 8th Dist. Cuyahoga No. 102071, 2015-Ohio-4177, ¶ 44. "'Preponderance of the evidence' means 'evidence that's more probable, more persuasive, or of greater probative value.'" *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7, quoting *In re D.P.*, 10th Dist. Franklin No. 05AP-117, 2005-Ohio-5097, ¶ 52.

{¶ 15} "Unlike R.C. 2151.414(D), which sets forth specific factors that the court must consider before terminating parental rights and granting permanent custody, R.C. 2151.353(A)(3) does not independently set forth factors that the court should consider for determining the child's best interests in a request for legal custody." *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 16. Thus, while the best-interest factors in R.C. 2151.414(D) "are instructive when making a determination as to the child's best interest" in a legal custody matter, "we must presume that * * * the legislature did not intend to require the consideration of certain factors as a predicate for granting legal custody." *In re N.N.*, 8th Dist. Cuyahoga No. 110443, 2021-Ohio-3931, ¶ 20.

{¶ 16} In this case, a preponderance of the evidence supports the trial court's judgments granting legal custody of Che.A. and Cha.A. to the maternal step-grandmother, and legal custody of Cl.A. to the maternal aunt. The record reflects that the agency's involvement in these cases was precipitated by the domestically violent relationship between Mother and the children's father, which raised

concerns about her mental health, lack of judgment, and parenting skills. Following the children's removal, the agency developed and implemented a case plan for Mother to promote reunification.[2] Mother's case plan included services to address her issues with domestic violence, anger management, mental health, and provision of the children's basic needs.

{¶ 17} Nevertheless, as Ebony Wright, the agency's social worker on the case, testified at the legal custody hearing, despite Mother's completion of a domestic violence and anger management program, she did not benefit from the services or learn to control her anger. In November 2022, Mother was placed on probation for assaulting a police officer. And, as Wright testified, during her interactions with Mother, Mother continued to be "very combative" and "very aggressive," threatening to file motions or contact the police in an attempt to avoid any effective communication with Wright. She said the agency also believed that Mother was still involved with the children's domestically violent father.

{¶ 18} Wright testified that based on her experience as a social worker, she believed that Mother's "explosive" and "unbalanced" behavior was indicative of undiagnosed mental health issues. Wright said that Mother was referred for a mental health assessment through the Juvenile Court Diagnostic Clinic but, although she completed the assessment, she did not engage in the mental health

---

[2] The agency also developed a plan for the children's father, but he never made himself available for services. Because he did not appeal the trial court's decision granting legal custody of the children to their relatives, we consider the facts only as they relate to Mother.

services that were recommended as a result of the assessment. Wright said that Mother cancelled both psychiatric appointments that were made for her and, as of the hearing, had not engaged with a psychiatric provider. She also had not been consistent in attending counseling twice a month, as recommended by the assessment. Wright testified that Mother had not benefitted from her "limited engagement in mental health services," as demonstrated by her behavior the day of the legal custody hearing when, before the hearing began, Mother became "aggressive, irate, overtalking, just unbalanced," and then, despite the court's valiant efforts to persuade her to stay, angrily left the courtroom, not to return. Wright said that Mother's behavior affected her visits with her children; although she had initially visited with her children in person, the visits were changed to Zoom visits because of Mother's "aggressiveness and behaviors" during a visit that caused the children to become "nervous, uneasy, and [start] crying."

{¶ 19} Wright testified that Mother did not have consistent housing (she had three different addresses while the cases were pending). She said that Mother had lived at her most recent address from March 2022 to December 2022, when she was evicted but, as of the legal custody hearing, despite requests from Wright to visit her home, had not given her any information about where she was living.

{¶ 20} Wright testified that Che.A. and Cha.A. were "very well bonded" with their maternal step-grandmother and that Cl.A., who was placed with a maternal aunt, was also "very well bonded" with the aunt. Wright said that the agency sought an order of legal custody for the children to the respective relatives because Mother

had not resolved her mental health and other issues, and legal custody to the relatives would allow the children's basic needs to be met while also maintaining family ties. At the hearing, both the step-grandmother and aunt said that they would ensure that the children visited with each other and maintained their family ties.

{¶ 21} The guardian ad litem for the children said that based on his observations of Mother's behavior during the pendency of the cases, he too believed that Mother had untreated mental health issues that prevented her from adequately caring for the children. He concluded that based on Mother's actions, which he opined "speak for themselves," it was in the children's best interest to be placed in the legal custody of their relatives.

{¶ 22} We find that on this record, there was a preponderance of the evidence to support the trial court's legal custody determination. The evidence clearly established that in the two years since the older children had been removed, Mother had failed to resolve her mental health, domestic violence, and anger management issues, as well as her inability to provide for her children's basic needs. Further, the evidence clearly established that it was in the children's best interest to be placed in the legal custody of their relatives, with whom they were "well bonded" and who had already demonstrated they were willing and able to care for the children.

{¶ 23} Mother's contention that the trial court's decision granting legal custody to the children's relatives is erroneous because the trial court "did not properly weigh the relevant factors" of R.C. 2151.414(D) in reaching its

determination is without merit. As noted above, although the factors in R.C. 2151.414(D) may be instructive to the trial court in reaching its determination, consideration of these factors is not required when the trial court makes a best-interest-of-the-child determination in legal custody matters. *In re J.B.*, 8th Dist. Cuyahoga No. 109039, 2020-Ohio-3675, ¶ 17, citing *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 16. Thus, the trial court is not required to weigh the R.C. 2151.414(D) factors in a legal custody matter.

{¶ 24} Our standard of review in this case is whether the trial court abused its discretion in granting legal custody of the children to Mother's relatives. We find no abuse of discretion because the trial court's judgments comport with both the record and reason. The second assignment of error is therefore overruled.

{¶ 25} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

ANITA LASTER MAYS, A.J., and
MICHAEL JOHN RYAN, J., CONCUR